SCHMIDT, Appellant, vs. CITY OF MILWAUKEE, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*April 4—April 23, 1912.*

*Appeal: Lack of jurisdiction in tribunal below: Admissions: Munici-*
*pal corporations: Improvements: Change in street grade: Dam-*
*ages: Assessment: What constitutes a "lot:" By whom deter-*
*mined: Milwaukee city charter: Police power: Depression of*
*railroad tracks: Viaducts: Special verdicts: Questions not sub-*
*mitted: Waiver: Evidence: Weight: Expert testimony.*

1. The rule that the appellate tribunal acquires no jurisdiction if
   the tribunal whose act is sought to be reviewed had none, is to
   be applied with caution and discretion; and in any case no mere
   admission that proceedings are void can show that the tribunal
   below had no jurisdiction of the subject matter, for the same
   reason that no consent could confer such jurisdiction.
2. Thus, where the notice of appeal from an assessment by a board
   of public works of the damages to abutting property by reason
   of a change in the grade of a street stated generally that the
   proceedings were illegal and void, such statement, although as-
   sented to on behalf of the city, did not deprive the circuit court
   of jurisdiction of the appeal. Jurisdiction in such cases is de-
   pendent upon and governed wholly by the statute.
3. Sec. 8 of ch. VII of the Milwaukee city charter does not limit the
   right of the lotowner, in the case of a change of a street grade,
   to damages only for the purpose of reducing benefits or as an
   offset against benefits.
4. Lots fronting on the improvement, with respect to which an as-
   sessment of benefits and damages is provided for in secs. 7, 8,
   ch. VII, Milwaukee city charter, are not limited to lots desig-
   nated on the plat which actually abut upon the street in ques-
   tion; but such a "lot" may consist of parcels forming a distinct
   homestead or other inclosure, a messuage or unit of property
   which fronts on the improvement, but which is laid out, occu-
   pied, or inclosed without reference to platted lines.
5. But where two parcels are separated by a public street or alley,
   no matter how they are occupied or used, they cannot under the
   provisions of the Milwaukee city charter be considered as a
   unit for the purpose of assessment.
6. Under such city charter the board of public works determines in
   the first instance what constitutes a lot fronting on the improve-

ment in the particular case; but on appeal the circuit court considers and determines the matter *de novo.*

7. Where the board of public works assessed damages to nine lots in a body owned by plaintiff, and on appeal the jury found no damages to the property as a whole but awarded damages as to the one lot which abutted on the street affected by the improvement, that constituted a determination by the jury of what part of the plaintiff's property constituted a "lot" fronting on the improvement and affected or injured thereby.

8. Where plaintiff's property fronted upon two cross streets the grades of which were changed, but was divided into separate parcels by a public alley, and he took a separate appeal from the award of damages as to each street, which appeals were consolidated for the purpose of trial, it was proper upon such trial to keep separate and submit separately to the jury the questions as to the damages resulting from the change of the grade of each of said streets.

9. Where the streets involved were crossed by railroad tracks and the changes in grade were made in connection with the depression of such tracks pursuant to an ordinance passed by the common council under its police power, and consisted in a slight elevation of each of the bridges or viaducts over such railroad tracks, the drying up of a spring and the loss of a sidetrack, which were attributable to the depression of the railroad tracks, were properly excluded from the award of damages against the city arising from such changes of grade.

10. Ch. 376, Laws of 1901, authorizing cities of the first class to construct viaducts over railroad tracks and to negotiate with the railroad companies for the payment of a proportion of the expense of such construction, is a grant of additional power, not a limitation upon the police power given by the Milwaukee city charter (ch. IV, sec. 3, subd. 48) to control the location of railroad tracks and to require railroad companies to construct and maintain at their own expense such bridges, viaducts, etc., as the common council may deem necessary.

11. The provisions of said ch. 376, Laws of 1901, relative to the assessment of damages sustained by the owners of abutting property, are applicable only when the city has determined itself to construct a viaduct, and not in a case where, under the police power, the council has ordered a railroad company to depress its tracks and construct a viaduct or overhead crossing at its own expense.

12. Where the council by ordinance required a railroad company to depress its tracks and to construct bridges or viaducts at street

crossings, and so fixed the depth of the depression that the viaducts must be elevated above the former street grades, thus making necessary the raising of the grades of the streets for approaches to such viaducts, a subsequent ordinance providing for such raising of the grades was an independent and separate exercise of power on the part of the city, and in the assessment of damages by reason of such change of grade no damages growing out of the acts of the railroad company in attempting to comply with the earlier ordinance are within the jurisdiction of the board of public works or of the circuit court on appeal from such board.

[13. Whether in such a case the landowner has a right of action against the railroad company on account of damages resulting from the depression of the tracks, or whether all such damages were compensated in the original purchase or condemnation of the land by the railroad company, is not determined.]

14. Where the grade of a street is raised, the right of the owner of abutting lands to damages is the same whether the change in grade is made by earth filling or by the extension of a viaduct in front of such lots.

15. On appeal a party cannot complain of the failure of the trial court to submit in a special verdict a question as to a special issue, where he did not request such submission and it would be inconsistent with his theory of the case as presented below.

16. The damages which the owner of abutting lots is entitled to recover for a change in the grade of the street are measured by the depreciation in value caused by the change. The cost of restoration, though a factor in estimating such damages, is not a proper item of damages to be found separately, since to allow the recovery of such cost would be to ignore the benefits which should be offset.

17. In fixing the damages to abutting property from a change of street grade, the jury are not bound by the opinions or arguments of experts, particularly where their estimates are based upon unwarranted premises or upon reasons fanciful and ingenious rather than sound.

APPEALS from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Prior to April 15, 1902, the plaintiff owned a number of city lots in the north half of block 220 in the Eighteenth ward of *Milwaukee* upon which he operated a plant for cutting, sawing, and dressing stone, with the necessary buildings and

appliances.   Bounding this block on the west was Bartlett
street, on the north North avenue, and on the east Oakland
avenue, all graded and improved streets.   Through the mid-
dle of the block, running north and south and parallel with
Oakland avenue and with Bartlett street, was a public alley
fourteen feet wide.   On the west side of this alley and be-
tween it and Bartlett street, running east and west and begin-
ning at the North avenue line and lying parallel therewith and
numbering from there south, were lots 39 to 31 inclusive,
owned and occupied by the plaintiff.   Considering platting
alone, only lot 39 abutted on North avenue, but all these lots
were used and occupied together as part of the stone-dressing
plant.   On the east of this alley, between it and Oakland ave-
nue, running east and west and beginning at the north line of
the block, were lots 1 to 6 inclusive.   Crossing North avenue
diagonally at grade, running southeast, and cutting off the
greater parts of lots 1 and 2, about half of lot 3, and parts of
lots 4, 5, and 6, was the right of way of the Chicago & North-
western Railway, which, proceeding southeasterly, crossed
Oakland avenue diagonally and at grade.   In the middle of
this right of way were double tracks of the railroad.   The
plaintiff owned those fractions of lots 1, 2, 3, 4, and 5 between
the alley mentioned and the railway right of way, and also
lot 6, only the southerly ten feet of which touched the bound-
ary of Oakland avenue.   Between the north part of lot 6 and
all of the other lots mentioned and the boundary of Oakland
avenue extended the right of way of the said railroad.   A
sidetrack connecting with the westerly track of the railroad
company near the west boundary of Oakland avenue swung
over the right of way and in upon plaintiff's premises.   Only
a very small part of the west end of lot 1 belonged to the
plaintiff and abutted on North avenue, and there was evidence
from which the jury might have found that this was taken
away by the excavation for the depression of the railway

tracks and the building of the necessary retaining wall or for the construction of plaintiff's new sidetrack.

On April 15, 1902, there was enacted by the city authorities an ordinance requiring the depression of the roadbed and tracks of this railroad and for bridges over said roadbed and tracks where they intersected the streets. The first section of the ordinance required the said railroad company to depress the plane of its roadbed and tracks in the manner, to the depth, and upon the conditions specified in said ordinance. Detailed directions followed, including the manner of construction of bridges over all depressed roadbed and tracks on North avenue, Oakland avenue, and elsewhere. The plans of these bridges were to be approved by the board of public works of the city, but the railroad was required to build them. It was provided by sec. 5 that nothing in the ordinance should be construed to require the railroad company to assume or pay any damages to adjacent property or business caused by the depression of its tracks or change of grade of any street, etc., and that in consideration of the railroad company's construction of the bridges at the street crossings and of its acceptance of the ordinance and agreement to do and perform all things required to be done and performed by it under the ordinance, all damages, if any there were, should be adjusted and paid by the city, and the city should intervene in suits brought for the recovery of such damages and relieve the railroad company from defending the same and assume and pay all judgments recovered therein. The ordinance contains other provisions not relevant here. The effect of this ordinance was, by means of such depression and bridges, to create overhead crossings instead of the former grade crossings, and, apparently in order to lighten the burden of the railroad company, the depth of depression was so fixed that the level of the bridge, viaduct, or overhead crossing at the places in question was to be three feet above the former street grade.

On September 12, 1902, the city by ordinance changed the grade of North avenue for about a block each way from each end of the viaduct for the purpose of making an approach to the viaduct, and in like manner changed the grade at the Oakland avenue viaduct. This change of grade was three feet at the contact of the approach with the viaduct on North avenue and diminishing to zero as it receded from the bridge, and three and one-half feet at the same contact on Oakland avenue and in like manner diminishing. The actual street surface, however, in each instance was above the grade fixed by the old ordinance, so that the actual raise under the ordinance of September 12, 1902, was not equal to the difference between the former established grade and the later established grade. After the railroad company had depressed its tracks and built its bridges or viaducts and on or about April 18, 1904, the common council of the city, upon report of the board of public works, adopted a resolution to grade and curb the streets and plank the sidewalks on North avenue from Bartlett street to Kenilworth Place, which is about the east boundary of Oakland avenue. This was said to be "for the reason that on account of the depression of the railway tracks in the immediate vicinity the said street has become inadequate, inconvenient, and unsafe for the public use thereof, for the passage of foot passengers and vehicles, and for the drainage of water therefrom." This grading and curbing of the street and planking of the sidewalks were to be done at the expense of the city and without special assessment on the abutting lots, so that the only thing the abutting lotowners are legally concerned with is the damages arising from change of grade. A like resolution related to the approach to the Oakland avenue viaduct or overhead crossing.

An assessment of benefits and damages was ordered and such assessment was made and confirmed, there being two separate proceedings, one for Oakland avenue and one for North avenue, each also including other streets. No part of the cost

of paving streets or restoring streets or sidewalks was to be
charged to the abutting owners, and this assessment of bene-
fits and damages appears to have been entirely formal, appar-
ently in endeavor to comply literally with the charter of the
city, which requires the fixing of damages by the board of pub-
lic works for change of grade to be made at the time of assess-
ing benefits.   The damages for change of grade to lots 1, 2, 3,
4, and 5 were not assessed at all, presumably because these lots
did not front on the street on which the improvement was made.
Lot 6 was indicated as belonging partly to the railroad com-
pany and partly to the plaintiff, and it was found that there
were no benefits and no damages to this lot.   This assessment
related solely to the change of grade on Oakland avenue.   No
damages were awarded on account of the change of grade on
North avenue to lot 1.   Lots 31 to 39 inclusive were assessed
for the change of grade on North avenue, and it was found
that there were no benefits and $100 damages to be paid to the
owner.   From each of these assessments of damages the
plaintiff took a separate appeal to the circuit court for Mil-
waukee county; in the North avenue case on the ground that
the amount of $100 adjudged and allowed to him as owner of
said lots for damages, costs, and charges arising from the al-
teration of the grade of the street is insufficient, inadequate,
and unjust and all of said proceedings are illegal and void.
From the Oakland avenue assessment a like appeal was taken
which stated the grounds of the appeal as follows:

"The failure and refusal to adjudge and allow him as such
owner of said lots, by said corrected assessment confirmed as
aforesaid, any sum of money whatever for damages, costs, and
charges arising from the alteration of the grade of the street
and for the deprivation of the right to use and the use of the
spur track, extending northwesterly over lot 6 from the Chi-
cago & Northwestern Railroad Company's tracks and right
of way, is unjust, in that there should have been adjudged
and allowed to him as such owner of said lots, and particu-
larly of the south twenty-two feet of lot 6 in said block, a sum

of money for damages, costs, and charges arising from the alteration of the grade of said street and said deprivation; and that all of said proceedings are illegal and void."

After these appeals were lodged in the circuit court the latter by order consolidated the appeals. The jury found a special verdict as follows:

"(1) Were lots 1, 2, 3, 4, 5, and 6 in block 220, considered as one parcel, affected or injured in consequence of the alteration of the grade of Oakland avenue opposite lot 6, excluding from your consideration the loss of sidetrack and any other injury resulting from the depression of the tracks of the railroad? *A.* No.

"(3) Were the plaintiff's premises, including lots 1 to 6 and 31 to 39 in block 220, considered as one parcel and for the purpose for which they were used at the time the grade was changed, affected or injured by the change of grade of Oakland avenue, excluding from your consideration the loss of sidetrack and any other injury resulting from the depression of the railroad tracks? *A.* No.

"(5) Were lots 31 to 39 in block 220 affected or injured by the change of grade of North avenue, exclusive of the damage caused by the depression of the track or other injury resulting therefrom, considering the use being made of them at the time such alteration of grade was effected? *A.* No.

"(7) Were the plaintiff's premises, including lots 1 to 6 and 31 to 39 in block 220, considered as one parcel and for the purpose for which they were then used, affected or injured by the change of grade of North avenue, excluding from your consideration the loss of the spring and any injury resulting from the depression of the railroad tracks? *A.* No.

"(9) If you shall be of the opinion that lot 6, considered separate from all the other lots of the plaintiff, was affected or injured by the change of grade on Oakland avenue, then answer: What sum will compensate the plaintiff for such injury to said lot 6? *A.* None.

"(10) If you shall be of the opinion that lot 39, considered separate and apart from all the other lots of the plaintiff, was affected or injured by the change of grade of North avenue, then answer: What sum will compensate said plaintiff for such injury to said lot 39? *A.* $225.

"(11) Did any of the plaintiff's property abut on the bridge on Oakland avenue after the erection of said bridge? *A*. Yes.

"(12) How much were said abutting lots damaged by said bridge? *A*. $225.

"(13) Did any of the plaintiff's property abut on the bridge on North avenue after the erection of said bridge? *A*. No."

For the plaintiff there were separate briefs by *Aarons & Niven,* attorneys, and *Moritz Wittig,* of counsel, and the cause was argued orally by *Mr. C. L. Aarons* and *Mr. Wittig.*

For the defendant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.*

TIMLIN, J.   The defendant makes two points on its appeal: (1) The circuit court erred in denying defendant's motion to dismiss the appeals from the board of public works to that court.   (2) That part of the judgment which awards damages caused by the bridges is erroneous.   The first is in the nature of a preliminary objection; the second can best be considered in connection with the errors assigned by plaintiff's counsel.

The notices of appeal made by the plaintiff each end with a sort of sweeping condemnation to the effect that "said proceedings are illegal and void."   The city by counsel assents to this and apparently thinks that it has in this way gained a point on its adversary and brought the matter within the rule sometimes applied that an appeal confers no jurisdiction upon the appellate tribunal if it can be shown that the tribunal below had no jurisdiction.   Counsel for the city attempts to support this further by pointing out with reference to North avenue that only lot 39 west of the alley abuts on that street, while the damages to lots 31 to 39 inclusive were found by the board of public works, and further that the lots are found to have been damaged notwithstanding no benefits were found.

The objection here goes to jurisdiction of the subject matter, because it must be obvious that the parties were before the court. There is a rule of law applicable to some appeals under which the appellate tribunal acquires no jurisdiction provided the tribunal whose act is sought to be reviewed had none. *Stringham v. Winnebago Co.* 24 Wis. 594; *Birdsall v. Kewaunee Co.* 124 Wis. 576, 103 N. W. 1. This rule is, however, to be applied with caution and discretion and rests upon a construction of the statutes authorizing the review of the decision below; but in any case no mere admission that proceedings are void could show that the tribunal below had no jurisdiction of the subject matter, for the same reason that no consent could confer such jurisdiction. An admission that a tribunal has no jurisdiction of the subject matter is like an admission that no statutes exist when we have the public statutes before us showing the contrary. Jurisdiction is the power and authority conferred by law upon the officer or tribunal, and in order to ascertain its existence and scope we must go to the statutes. The idea that such power and authority should become lost or nonexistent by slip of the tongue or pen or even by express stipulation is, to say the least, very novel and fundamentally unsound. The statutes dispose not only of this alleged error but of several others relied upon by the plaintiff for reversal of this judgment.

The somewhat complicated situation presented by the facts is further complicated by the contentions and variant theories of counsel. On the part of the appellant *Schmidt,* who appears by two different counsel who file separate briefs and present separate theories of the case, it is contended (1) that the damages caused by the depression or sinking of the railway tracks should not have been excluded from the recovery; (2) that damages for loss of sidetrack and the drying up of a spring on the premises should have been included; (3) that the plaintiff's property should have been considered as a unit and the inquiry directed to an investigation of the damages

caused to it as a whole; (4) that after the consolidation of appeals the damages from the change of grade on Oakland avenue and those arising from the change of grade on North avenue should not have been considered separately but should have been lumped together; (5) that if the plaintiff's premises should not be considered as a unit it should at least have been considered as two units, one lying east and one west of the alley, for the purpose of estimating damages, and not at all considered by separate lots; (6) that the court should have submitted to the jury the damages caused by the change of grade of North avenue to lot 1 because a part of that lot owned by plaintiff fronted on North avenue; (7) that the charge of the court was incorrect in that it conflicted with the foregoing claims and in that it did not permit the jury to consider certain testimony relative to the cost of restoration, but confined them to damages for depreciation in value caused by the improvement, and was incorrect in other particulars; (8) that the verdict is not supported by evidence and is inconsistent and perverse; (9) that errors occurred in the admission and exclusion of evidence, and that there were other detail errors not necessary to notice, but nearly or remotely related to some or all of the foregoing points.

The city charter, sec. 8, ch. VII, upon conditions there mentioned, gives to the owner of any lot or parcel of land which may be affected or injured in consequence of an alteration of the grade of the streets compensation therefor. The board of public works is authorized, at the time of assessing benefits caused by street improvements, to consider, determine, and assess against the lots which they may deem benefited by the proposed improvement, to the amount of such benefits, the damages, costs, and charges, including the cost of such improvement, arising from such alteration of grade. A construction of this section which might limit the right of the lotowner to damages only for the purpose of reducing benefits or as an offset against benefits was rejected in *Milwaukee T. Co. v. Mil-*

*waukee,* 146 Wis. 245, 131 N. W. 439, and in *Filer & S. Co. v. Milwaukee,* 146 Wis. 221, 131 N. W. 345. Sec. 8 does not expressly mention abutting owners or abutting lots, but it does permit the board to "consider, determine, and assess" the damages to the lots which they deem benefited. Sec. 7 speaks of these lots as lots fronting on the improvement. This has been generally understood to refer to abutting lots, but not solely with reference to their platted identity. The plat is only one factor in the result; occupancy as a single inclosure and conveyances are others. *Loewenbach v. Milwaukee,* 139 Wis. 49, 119 N. W. 888. There can rarely arise under this statute questions not readily solvable by common sense. Lots fronting on the improvement may be either lots as designated on the plat or parcels forming a distinct homestead or other inclosure, a messuage or unit of property which fronts on the improvement, but which is laid out, occupied, or inclosed without reference to platted lines. This description is illustrative, not exhaustive. It is, however, an error to contend that in ascertaining whether or not a given parcel is a lot fronting on the street or an assessable unit you could cross other street or alley lines. It is also manifestly erroneous to attempt to apply the rule relative to damages in condemnation cases to damages caused by change of grade. We must always bear in mind that where a new right is given by statute together with a remedy for its enforcement, that remedy is exclusive, except in some cases where the party injured has been prevented by the wrong of the other party from resorting to such statutory remedy. Where two parcels are separated by a public street or alley, no matter how they are used or occupied, they cannot under these provisions of the charter be considered as a unit for the purpose of assessment. The reason is obvious. The board of public works is authorized to determine and assess the damages arising from such alteration of grade against the lots which are liable to be assessed for benefits. This means, first, lots fronting on the improvement, and, second, lots not sepa-

rated from the improvement by another public street or alley. Hamilton, Special Assessments, § 217 and cases; Id. § 541 and cases. The owner of any lots of the foregoing description which may be "affected or injured in consequence of an alteration of the grade" may be awarded compensation. This confers on the board of public works not only power to consider, determine, and assess the damages arising from such alteration of grade, but also to determine what constitutes a lot fronting on the improvement in the particular case. This is usually a question of fact. Not so much so, however, that the board of public works could assess damages for a lot which in no sense fronted upon the improvement or upon the street the grade of which was changed, or disregard the fact that a public street or alley intervened between a lot fronting on said street and another lot for which the owner claimed damages.

Sec. 11 of ch. VII of the city charter provides that the owner of any lot or tract of land or tenement who feels himself aggrieved by the amount of damages, costs, and charges arising to such owner from an alteration of grade may within twenty days after such confirmation by the common council appeal therefrom to the circuit court for Milwaukee county. There are many instances in the law in which an appeal is allowed from a subordinate *quasi*-judicial tribunal, or rather a subordinate tribunal exercising *quasi*-judicial power, to the regularly constituted courts. In such cases, so far as the *quasi*-judicial questions before such subordinate body or board are concerned, the circuit court takes up the matter *de novo,* determines anew for itself what constitutes a lot fronting on a street and affected or injured and the amount of damages to which the owner is entitled.

In the instant case the board of public works acted on two different assessments, one on Oakland avenue and one on North avenue. The board awarded no damages and charged for no benefits on account of the Oakland avenue change of grade and improvement. It did award on account of the North

avenue change of grade damages in the amount of $100 to all of plaintiff's lots west of the public alley, treating this tract as a lot fronting on North avenue affected or injured by the change of grade. The damage to all these lots must include all the damage to lot 39. Upon appeal the trial court by question 5 submitted this identical question to the jury, and the jury found that, considering lots 31 to 39 together, they were not affected or injured by the change of grade, and by question 10 found that lot 39, considered separate and apart, was affected or injured by the change of grade in the sum of $225. This we regard as disposing of a question of fact, namely, what part of plaintiff's premises lying west of the alley constituted a lot fronting on the improvement and affected or injured by the change of grade. That question depended upon the practicability and feasibility of access from Bartlett street to the lots 31 to 38 inclusive; to the disposition and location and use of the buildings on lot 39; to the differences in level, if any, between lot 39 and the remainder of the tract west of the alley; to the extent to which filling or grading was necessary to reach lot 39 from the street with facility and not necessary to reach the other lots in this group; and many other items and conditions of fact which might be mentioned. It was within the jurisdiction of the board of public works to determine in the first instance that lot 39 was the lot affected or injured and fronting on the improvement. They did not do so, but found lots 31 to 39 to answer that description. It was within the province of the circuit court on appeal to find that the board of public works was mistaken and that lot 39 only answered this description. Similar considerations apply to the findings of the jury numbered 1 and 9.

By questions 3 and 7 the court submitted to the jury separately whether plaintiff's premises, considered as a whole, were affected or injured by the change of grade of Oakland avenue or that of North avenue. The jury answered these questions in the negative and therefore no harm was done in

their submission.   We think that the questions relative to the damages occasioned by change of grade on Oakland avenue and those caused by change of grade on North avenue were properly kept separate and submitted to the jury separately. They could not well be combined without confusion.   It was also very proper to submit questions 5 and 10 to the jury, because these questions as stated presented an issuable matter of fact necessary to be determined by the jury.   We must approve of the verdict in so far as it kept separate or tended to keep separate the damages, if any, caused by the change of grade on Oakland avenue from those, if any, caused by the change of grade on North avenue; also in so far as it permitted the jury to determine what portion of the land west of the alley constituted a lot fronting on the improvement and what portion of the land east of the alley constituted a lot fronting on the improvement.   It is apparent that the loss of plaintiff's sidetrack and the drying up of the spring were not damages caused by the change of grade of these streets.

The depression of the railway tracks to a depth of about nineteen feet below their former level was ordered by the city, in the exercise of its police power, to protect life and property menaced by the danger of street crossings at grade.   By subd. 48, sec. 3, ch. IV of the charter the city has power to direct and control the location of railroad tracks and to require railroad companies to construct and maintain at their own expense such bridges, viaducts, tunnels, or other conveniences at public railroad crossings as the common council may deem necessary. Ch. 376, Laws of 1901, authorizes the city to itself construct such viaducts and to enter into negotiations with the railroad company for the payment of such proportion of the expense of constructing viaducts as may be agreed upon between them. But taking subd. 48 of sec. 3 of ch. IV of the charter and sec. 6 of ch. 376, Laws of 1901, together, the police power of the city in this regard is in no wise diminished.   The effect of ch. 376, *supra,* is to add to the powers of cities of the first class by giv-

ing them the option to build these viaducts and by agreement with the railroad company share the expense of the construction of the viaducts. This is a grant of additional power, not a limitation upon the former police power. The extent of the latter power has been declared and firmly established by *Chicago, B. & Q. R. Co. v. State ex rel. Omaha,* 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481; *State ex rel. Minneapolis v. St. P., M. & M. R. Co.* 98 Minn. 380, 108 N. W. 261, 28 L. R. A. N. S. 298; *New York & N. E. R. Co. v. Bristow,* 151 U. S. 556, 14 Sup. Ct. 437. Whether the city of *Milwaukee* in its ordinance of April 15, 1902, exceeded the powers conferred upon it by said ch. 376 we need not determine in this case. By that ordinance the Chicago & Northwestern Railway Company is ordered to depress its roadbed and tracks as therein indicated. In this work of depression the city takes no part nor is it authorized to do so under ch. 376, *supra.* The city merely gives the law to and imposes the duty upon the railway company. Over the excavated ditch or valley resulting from this depression, where the same is intersected by street crossings, bridges are required to be constructed. These may be called bridges, viaducts, or overhead crossings. The railway company was required to make the excavation and build the viaducts. The latter were to be built according to plans and specifications approved by the board of public works. It is only when the city shall have determined itself to erect and construct such a viaduct that it may assess the damages sustained by the owner of abutting property in the manner provided by law for the determination and assessment of damages for the alteration of the grade of a street. The proceedings here do not bring the case within that description. The depression of the tracks to such a depth only as to require the elevation of the viaducts three feet or thereabouts over the former street grade in order that the trains could pass safely under said viaducts made necessary the raising of the grade of the streets for an approach to these viaducts. It also raised the

street level at the place spanned by the viaduct to the extent of three feet. In a logical sense these matters were all related, but they had no legal connection. The raising of the grade of the streets was an independent and separate exercise of power on the part of the city, and the fact that it was exercised in the instant case because of the necessity or convenience growing out of some other act or order of the city would not make this all one legal proceeding. The depression of the railroad tracks and the construction of the overhead crossings or viaducts by the railroad company in obedience to law imposing that duty upon the company was not a part of the proceedings for the change of grade of the streets, nor within the jurisdiction of the board of public works in estimating damages for change of grade, and the plaintiff's demand for damages growing out of the acts of the railroad company in attempting to conform to that law was not brought to the circuit court upon appeal from the board of public works. These damages relate to a different matter, claimed by a different right, to be asserted before a different tribunal. Whether the plaintiff has any right of action against the railway company on account of such damages, or whether all such damages were compensated in the original purchase or condemnation by the railroad company, it is not necessary or proper to determine in this proceeding, to which the railway company is not and cannot be a party. It is sufficient for this case that all damages caused by the depression of the railway tracks and the mere construction of the viaducts were not within the jurisdiction of the board of public works, consequently not within the jurisdiction of the circuit court in this case on appeal from that board. We hold, therefore:

1. There was no error in excluding consideration of plaintiff's damages resulting from the depression of the railway tracks generally, including the loss of sidetrack, spring, etc.

2. There was no error in excluding damages claimed under ch. 376, Laws of 1901.

3. There was no error in the form of verdict. On the contrary the case seems to have been very well and skilfully submitted. The third and seventh questions were unnecessarily submitted, but the answers thereunto disposed of these questions in such a way as not to affect the correctness of the final result.

On the other hand, so far as the grade of the street was raised in front of plaintiff's lots or any part thereof, the plaintiff was entitled to damages to be assessed by the board of public works, and, they failing, by the circuit court, whether its raise was accomplished by an earth filling or by an extension of a viaduct in front of such lots. *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039. The circuit court was therefore correct in submitting the eleventh and twelfth questions to the jury. If the bridge on Oakland avenue extended some appreciable distance over the boundary of the railroad right of way at the acute angle formed by that boundary and the west boundary line of Oakland avenue so as to front on any part of lot 6 owned by the plaintiff, that elevation of the street was properly considered by the court as a raise of grade. The board of public works might have so considered it, but it probably erred in deciding that the viaduct terminated at a point in Oakland avenue which left no part of lot 6 abutting on the viaduct. There was evidence to sustain the answers to questions 11 and 12. The finding of damages from this cause, as we understand the case, rests upon the proposition that the grade of Oakland avenue in front of that part of lot 6 owned by the plaintiff was raised by ordinance and that the viaduct extended sufficiently over the railroad right of way so that a small part of it was in the street in front of that portion of lot 6 owned by the plaintiff. The special verdict as submitted did not contain a finding relative to lot 1 separately. The thirteenth finding, however, is to the effect that no part of the plaintiff's property abutted on the bridge on North avenue. There appears to be evidence to support this finding. A small

part of lot 1 owned by the plaintiff at the North avenue line, if any such part was owned, might have been dug away in the depression of the tracks or used for plaintiff's new sidetrack. The evidence is not sufficiently clear that the plaintiff had any boundary of lot 1 on North avenue to justify a reversal upon this ground.   The plaintiff did not request a special question covering this point or relating to lot 1.   His theory appeared to be that all the damages from the raise of grade on both streets should be thrown together and all his property considered as a unit or single lot and the damages assessed accordingly.   This we consider erroneous as heretofore stated, and the plaintiff cannot now complain of the omission of a special question relative to a special issue of this kind where he made no request for such submission and the submission would be inconsistent with his theory of the case as he presented it in the court below.   The finding of the jury that no part of plaintiff's property abutted on the bridge on North avenue we consider supported by evidence.   This bridge on North avenue appears to extend to the southwesterly boundary line of the right of way.   Beginning a little north of the south boundary of North avenue there is perceptible widening of the excavation for the plaintiff's new sidetrack which the jury may have found cut away all the small part of lot 1 remaining.   Assuming that plaintiff owns some of the land under this sidetrack, that land cannot be said to be damaged by the change of grade. So that there would be no prejudicial error if there was error. We are not satisfied that this finding is erroneous.   We think the instructions of the trial court were substantially correct and that the disposition of this difficult case was very skilful and that no prejudicial error occurred during the trial.

It was not proper to find separately as an item of damages the cost of restoration.   That would practically entitle the plaintiff to recover without the offset of benefits.   It is the net damage caused by the change of grade that the plaintiff is entitled to recover, and while the cost of restoration is a factor

in the estimation of such damages the final award is the depreciation in value, if any, of the abutting lot or parcel caused by the change of grade.

We do not consider the verdict against the weight of evidence.    There are some very extravagant claims put forth by witnesses in these change of grade cases, and the jury are not bound by the opinions or arguments of experts, no matter how plausible they may be, when there is evidence to the contrary. There is such evidence here.    We find no prejudicial errors in the admission or exclusion of evidence when the controversy before the court is properly adjusted to the statutes and rules of law governing such controversies.

We find no reversible error in the instructions.    They seem to be appropriate to the theory of the case entertained by the learned circuit judge, which in our opinion is the correct theory.    We do not regard the verdict as perverse or even as opposed to the weight of evidence.    Much of the high estimates of damages seems to be based upon unwarranted premises, such as water collecting and standing upon the plaintiff's grounds situate alongside a nineteen-foot depression and connected with city sewers; the cost of raising buildings and making new foundations, and other bases which seem to us rather fanciful and ingenious than sound.

When all is said the case amounts to this: Across the railroad right of way and upon Oakland avenue there was a change of grade not to exceed three and one-half feet at the highest point and diminishing to zero within the distance of about one side of a city square.    A small fraction of this was in front of a small fraction of lot 6.    The contact, if there was such, was slight, and lot 6 was not accessible from Oakland avenue at any time except over the railroad's right of way or by hugging closely the west boundary of Oakland avenue in the triangle formed by such west boundary and the southwesterly boundary of the right of way.    Surely the change of grade wrought no very serious damage under such circumstances.    On North. avenue there was a raise of three feet at the highest point and

sloping back to Bartlett street, where it reached zero. The actual raise was even less than this. The access from Bartlett street was unaffected. The principal damages to the plaintiff arise from the depression of the railroad tracks. Some filling of the alley was no doubt necessary to restore the former convenient connection with North avenue. The amount awarded by the jury for this tends to impress us with the good sense of the jury. Other damage claims seem to be such that the jury might upon the evidence reject them. On the whole we are unable to say that either the court or jury erred in the disposition made of these appeals. It follows that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.

On June 4, 1912, the mandate was amended by adding a direction as to costs in this court to the effect that "no costs shall be recovered by either party, but the fees of the clerk of this court shall be taxed, and paid by the city."