## ABBOT v. CITY OF MILWAUKEE et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1916.)

No. 2277.

1. MUNICIPAL CORPORATIONS &#8669;385(3)—STREETS—CHANGE OF GRADE.

Milwaukee City Charter, c. 7, § 8, declares that in all cases in which the grade of any street has been permanently established by ordinance since February 20, 1852, and the street actually graded, the owner of any lot injured by a change of grade shall be entitled to compensation. The grade of a street was established in 1873, and in the following year the street was ordered graded to the required level; the work done being accepted. Subsequently the level of the street, which had fallen below the required grade, was raised, and plaintiff's predecessor in title raised the floor of his building abutting on such street. Thereafter the street was ordered paved according to the grade originally established, which was above the then level of the street. *Held* that, though the work originally done did not bring the street up to the grade, nevertheless complainant was not entitled to any award of damages; the city not being estopped to deny that the work originally done was not according to ordinance, and complainant's predecessor having elevated the floor of his building when the street was raised.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 927; Dec. Dig. &#8669;385(3).]

2. MUNICIPAL CORPORATIONS &#8669;459—STREETS—PAVING—COST.

Milwaukee City Charter, c. 7, § 34, provides that no property fronting on any street or avenue in any city of the first, second, or third class shall be exempt from any assessment of benefits on account of the paving of the street with a permanent pavement having a concrete foundation, or the curbing or resurfacing of such street, until the property shall have paid in the aggregate in assessments for street pavements in front thereof the sum of $3 per square yard, and in cities of the first class the exemption shall extend only to and include one-half of the cost of such pavement in excess of $3 and only one-half of the cost of any subsequent pavement. *Held*, that the partial exemption from excess cost above $3 per square yard for permanent paving is granted only after an aggregate of $3 shall have been paid for street pavements, and does not limit the assessment for the original paving to $3 plus one-half of the excess cost.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1101; Dec. Dig. &#8669;459.]

3. MUNICIPAL CORPORATIONS &#8669;459—STREETS—PAVING—COST.

In such case the $3 must have been paid for paving, though not necessarily a permanent paving, but an early payment for the graveling of a Milwaukee street cannot be considered in determining the liability of abutting owners for subsequent improvements.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1101; Dec. Dig. &#8669;459.]

4. MUNICIPAL CORPORATIONS &#8669;439—STREETS—ASSESSMENT OF BENEFITS—ARBITRARY ASSESSMENT.

That the commissioner of public works, in determining the benefits to abutting property from the paving of a street, assessed the benefits at

&#8669;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

substantially the cost of the improvement, does not show that he acted arbitrarily.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1053; Dec. Dig. ☞439.]

5. MUNICIPAL CORPORATIONS ☞385(2)—STREETS—IMPROVEMENTS—DAMAGES.

Where, under Milwaukee City Charter, c. 7, damages from the paving of a street were limited to those due to any injury which in the opinion of the commissioner might result from such improvement, the commissioner of public works could disallow, as damnum absque injuria, damages for the paving of a street, where the only damages incurred resulted from the restoration of the street to the grade originally fixed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 926; Dec. Dig. ☞385(2).]

6. MUNICIPAL CORPORATIONS ☞456(2)—STREETS—IMPROVEMENT—ASSESSMENTS.

Under Milwaukee City Charter, c. 7, § 7, relating to the paving of streets, and providing that the commissioner of public works shall consider the benefits to the owners, and shall assess the same against the several lots or pieces of land which he may deem benefited, the commissioner may, where a subdivided piece of land, owned by one person and used by him as a single piece, abutted on the street, assess the benefits against the entire piece, instead of the several lots.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1095; Dec. Dig. ☞456(2).]

7. MUNICIPAL CORPORATIONS ☞456(2)—STREET IMPROVEMENTS—LEVY OF TAXES.

Where the benefits were assessed against the several lots as a whole, the assessment for the cost of the work may be levied in the same manner, notwithstanding the provision that a special assessment must not exceed the benefit to the piece assessed or the cost of the improvement upon which it abuts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1095; Dec. Dig. ☞456(2).]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Bill by Edwin H. Abbot, Jr., against the City of Milwaukee and others. From a decree dismissing the bill, complainant appeals. Affirmed.

This is an appeal from a decree dismissing, for want of equity, a bill to set aside a special assessment levied against plaintiff's property. The bill sets out, as alleged grounds of the invalidity of the assessment, the failure to assess damages arising from an alleged change in the street grade; arbitrary action of the commissioner of public works in the determination of the benefits and damages to the property; assessment of benefits to a number of lots owned by plaintiff in bulk, instead of separately, though the tax was levied on each lot separately; and a tax in excess of that allowed by law.

The property in question is improved dock property, consisting of a number of lots, some in block 167 and some in block 173, having a total frontage of 825 feet on Erie street in Milwaukee, Wis., and owned by the plaintiff since 1890. It has been used as dock property continuously by plaintiff and his predecessors in title since and prior to 1873. In that year the grade of Erie street was permanently established by the common council of Milwaukee. No ordinance has ever changed the grade. Subsequently, in the same year, a part of Erie street on which lots in block 167 abutted, was ordered by the council to be graded to the established grade, the roadway graveled, gutters paved, and sidewalks planked. The work performed under contract in 1874 was accepted by the city as properly done, and an assessment therefor, levied

against each lot of the abutting property, was paid. Subsequently the roadway was from time to time repaired, but without assessment. In 1912 the roadway was several feet below the grade established in 1873. Pursuant to a resolution of the common council, based upon the recommendation duly submitted, with estimates of cost and assessment of benefits and damages, by the commissioner of public works that a part of the roadway of Erie street, including plaintiff's entire frontage thereon, be paved with a permanent sandstone pavement, having a concrete foundation, the sidewalk curbed with stone, and the necessary grading done, this work was performed.

Benefits were assessed by the commissioner against plaintiff's property separately as to the land in block 167 and in block 173, but not separately as to each of the several lots in either block, although each lot abutted on the improvement. No damages were allowed. The benefits assessed were within 5 per cent. of the estimated cost of the paving and curbing. The actual cost exceeded the estimate, and exceeded by only a few dollars the assessed benefits. The taxes, equaling in the aggregate the benefits, were divided as between the lots and levied separately as to each lot.

The charter provisions affecting Milwaukee, a city of the first class, to be here considered are the following sections of chapter 7:

Section 2: "The grading, graveling * * * or paving to the center of any street * * * and curbing of any sidewalk * * * shall be chargeable to and payable by the lots fronting or abutting upon such street, * * * or * * * sidewalk, to the amount which such grading, graveling, * * * paving, and curbing shall be adjudged by said commissioner to benefit such lots. * * * After a street * * * has been constructed to the grade established by the common council, and graveled, planked, paved or macadamized in compliance with the order of the proper city authorities, the expense of maintaining, renewing, repaving, keeping in repair and cleaning such street, * * * and the pavement or other surface thereof, and of any other subsequent improvement of such street, * * * shall be paid out of the fund of the ward in which such work is done or such improvement is made: Provided, however, that when a street * * * which has been graveled, planked or macadamized, is ordered to be paved, the expense of such paving shall be chargeable to and payable by the lots fronting or abutting upon such street or alley to the amount which such paving shall be adjudged by said commissioner to benefit such lots as hereinbefore provided for the improvement of a street; and further provided, that when a change in the grade of any street or alley shall be ordered, the expense of cutting or filling incurred by such change of grade shall be chargeable to and paid by the lots fronting or abutting on the street or alley of which the grade shall be so changed."

Section 7: "Before ordering any work to be done by the owners of lots or lands fronting on the same, said commissioner shall view the premises, and consider the amount proposed to be made chargeable against said several lots or pieces of land, and the benefits which, in his opinion, will actually accrue to the owner of the same in consequence of such improvement, and shall assess against the several lots or pieces of lands, or parts of lots or pieces of land, which he may deem benefited by the proposed improvement, the amount of such benefit which those lots or pieces of land will severally, in the opinion of said commissioner, derive from such improvement when completed in the manner contemplated in the estimate of the cost of such work, made as provided by section six of this chapter, taking into consideration in each case any injury which in the opinion of the commissioner may result to each lot or piece of land from such improvement; and in case the benefits, in their opinion, amount to less than the cost of the improvement, the balance shall be paid out of the ward fund of the ward or wards in which improvement is made."

Section 8: "In all cases in which the grade of any street has been permanently established by ordinance since February 20, 1852, or shall hereafter be so established, and, after such permanent establishment thereof, and after such street shall have been actually graded to such established grade, the grade so established has been or shall be altered by the city, the owner of any lot or parcel of land which may be affected or injured in consequence of such alteration of grade, shall be entitled to compensation therefor; and it shall be the duty of the commissioner of public works, before ordering to be done the

236 F.—43

work of actually changing such established grade by excavating or filling such street to the new grade as so altered, and at the time of making his assessment of benefits, as provided in the next preceding section, to consider, determine and assess against the lots which he may deem benefited by the proposed improvement, to the amount of such benefits, the damages, costs, and charges, including the cost of such improvement, arising from such alteration of grade to the owner of any lot, parcel of land or tenement, which may be affected or injured in consequence thereof, taking into consideration in each case any advantages and benefits which may be conferred thereby upon such lot, parcel of land or tenement, in common with other property on the street affected by such grade; and the excess of the said damages, costs and charges over the benefits assessed, as provided in the next preceding section, shall be paid out of the ward funds of the ward or wards in which such improvement and alteration of grade shall be made."

Section 34: "No property fronting on any street or avenue in any city of the first, second or third class, shall be exempt from any assessment of benefits on account of the paving of said street or avenue with a permanent pavement, having a concrete foundation or the curbing or resurfacing of such street or avenue, until such property shall have paid in the aggregate in assessments for street pavements in front thereof the sum of three dollars per square yard; such assessments in each case to include all that part of the roadway lying directly in front of or abutting the property and lying between the curb line and the center of such roadway. In cities of the first and second class exemption shall extend only to and include one-half of the cost of such pavement, curbing, or resurfacing in excess of three dollars per square yard and only one-half the cost of any subsequent pavement, repavement, or resurfacing of such street or avenue. Whenever any property has paid less than the amount in this section required, it shall be held liable for any difference up to the full amount herein required."

Edwin H. Abbot, Jr., of Boston, Mass., in pro. per.
Clifton Williams, of Milwaukee, Wis., for appellees.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1] 1. Chapter 7, § 8, is entirely inapplicable to this case. The resolution of 1912 did not change the established grades. It expressly directed the paving to be done in accordance with the grade established in 1873. That the roadway was then below the established grade, and had been in that condition at least since 1879, is established by the evidence. But the evidence fails to establish that the work done in 1874 was not properly done; that the roadway was not then graveled up to grade. On the contrary, the only direct evidence is the certificate of the assistant city engineer that the contract had been complied with. The trial judge was justified under the evidence in concluding that in some way, not explained, this street had sunk between 1874 and 1879.

But even assuming that the work was improperly performed in 1874, so that the roadway was then lower than the legal grade and that the assessment was paid by the then owner in ignorance thereof, in our judgment, the acceptance of that work by the city engineer in no manner operated expressly or by estoppel to change the legally established grade and to fix it at the actual height of the roadway. No evidence of any affirmative act, in recognition of such a change, has been offered. Even such incidental repairs as were made from time to time are not shown to have been made by or pursuant to the orders of the city council or officials, or to have been based upon any recogni-

tion of any other grade than that specified in the ordinance of 1873 as the legally established grade of the street.

When plaintiff's predecessor extended his building in 1879 making the floor level with the street as it then was, and when, in the later '80's, in replacing the worn-out floor, he again raised it to the level of the street, which had theretofore been filled in some two feet, he did not act on any assertion of the city, either express or implied, that the street at either time was still at the established grade. The very change of two feet amply demonstrated that, either at one or the other time, or at both, the street no longer conformed thereto.

That the payment of the 1874 assessment does not estop plaintiff from asserting that the present pavement resulted in a change of grade may be conceded. A regrading, however, not to effectuate a change in the legal grade, but to re-establish it after the act of man or of nature has changed it in fact, gives no right to damages under chapter 7, § 8, of the charter.

[2] 2. Chapter 7, § 34, which in effect modifies and amends section 2, is likewise inapplicable. The partial exemption from the excess cost above $3 per square yard for a permanent paving is granted only after an aggregate of $3 shall have been paid for street pavements. Obviously this does not limit the assessment for the original paving to $3 plus one-half the excess cost. It clearly applies only to a later permanent paving.

[3] Furthermore, the $3 must have been paid for paving; not necessarily for a permanent paving (Weise v. Green Bay, 143 Wis. 198, 126 N. W. 681; Hoefer v. Milwaukee, 155 Wis. 83, 143 N. W. 1038), but nevertheless paving, in the sense in which this word is used in chapter 7, § 2, as distinguished from planking or graveling. Therefore the payment made in 1874 for graveling this street, the only payment for any improvement of Erie street so far as this record shows, cannot invalidate or in any manner affect the assessment for the 1912 improvement.

[4] 3. To prove that the commissioner acted arbitrarily in assessing the benefits, reliance is placed mainly upon the fact that the record shows substantial equality between the benefit and the cost of the work. This, however, by no means demonstrates either that the property was not fully benefited to the extent of the cost, or that the commissioner, disregarding all other considerations, arbitrarily regarded cost and benefits as synonymous.

Without detailing the evidence, we are of opinion that the trial judge, who heard the witnesses and viewed the property, was fully justified in his conclusion that the commissioner's action was within his jurisdiction and not arbitrary.

[5] As to damages, clearly none were caused by the permanent pavement as such. The only possible damages would be either the expense of conforming the building to the level of the re-established street grade or the capitalized loss in running the business with the building unchanged. In our judgment, the commissioner did not act arbitrarily in disregarding this loss and in assessing "no damages."

Under the charter, damages are limited to those due to "any injury which in the opinion of the commissioner may result from such improvement."

While damages due to the injuries caused by a change in the legal grade must be allowed to the abutting owner, the expense to which he may be put in bringing his building up to the level of the legally established street grade, necessitated, not by a change in the legal grade, but by its restoration after the street had fallen to the level of the building, may very properly have been deemed by the commissioner as damnum absque injuria.

[6] 4. Under section 7 of the charter, the benefits which will accrue to the owner of the several lots or pieces of land are to be considered by the commissioner; the amount of benefit, which the lots or pieces of land will severally derive from the improvement is to be assessed against them. Not only does this section provide for assessing either lots or pieces of land, but it specifically directs the commissioner to consider the benefits to the owner.

In our judgment, this direction to the commissioner to take into consideration the ownership of the property authorizes him to look to the unitary character of the several lots belonging to one owner and actually used by him as one piece of land, and if he deems it best, under all of the circumstances, to assess against the entire piece the benefits accruing to it as a unit. If a subdivided piece of land, owned by one person and used by him as a single piece, would be benefited by an improvement either to a greater or to a lesser extent than would the several lots, taken separately, no reason is apparent why the actual situation should be disregarded. Clearly the language of the Wisconsin statute permits of this just result. See, too, Schmidt v. City of Milwaukee, 149 Wis. 367, 135 N. W. 883.

[7] 5. If the benefits had been assessed separately against each lot, there would be much force in the contention that the taxes could not be levied against the entire piece of land as a unit, because of the provision that a special assessment must not exceed either the benefit to the piece assessed or the cost of so much of the improvement as it abuts. This is well illustrated by appellant's example of lot 1 benefited $800; lot 2, $200; tax of $1,000 levied against both lots jointly; cost of improvement in front of lot 1, $400; in front of lot 2, $600. The limit of the assessment would be $400 as to lot 1 and $200 as to lot 2. The $1,000 would be an illegal assessment.

The converse, however, as in this case, is not true. If, as we have just held, the benefits were properly assessed to the piece of land as a unit, because it belonged to and was used as such by one owner, the benefits, not to each lot, but to the piece as a whole, fixed the maximum assessment. But the cost of the work in front of each lot could be, and in this case was, determined. No possible harm can result to the owner by dividing the total tax, which was less than the benefits, between the several lots, apportioning, however, to each of them an amount in no case greater than the cost of the abutting section of the improvement.

In the absence of a specific statutory provision, requiring the tax to

be levied against the property exactly as described in the benefit assessment, the method here pursued cannot be declared illegal or arbitrary.

Decree affirmed.