WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Judgment accordingly.

---

ALEXANDER WOOLLCOTT, Appellant, *v.* LEE SHUBERT et al., Respondents.

Statutory construction — Civil Rights Act — statements and opinions of legislators cannot be considered by courts in ascertaining meaning of statutes — when reports of legislative committees may be considered — exclusion of dramatic critics from theatres — when such exclusion not prohibited by Civil Rights Act.

1. The statements and opinions of legislators uttered in debate are not competent aids to courts in ascertaining the meaning of statutes. While the formal reports of legislative committees relating to a bill in the course of progress are competent sources from which to discover the meaning of the language employed in a statute, they cannot be resorted to for the purpose of construing it contrary to its plain terms.

2. At the common law a theatre, while affected by a public interest which justified licensing under the police power or for the purpose of revenue, is in no sense public property or a public enterprise. The proprietor does not derive from the state the franchise to initiate and conduct it. His right to and control of it is the same as that of any private citizen in his property and affairs, and he has the right to decide who shall be admitted or excluded. The rights conferred by the Civil Rights Act are expressly made subject to any conditions or limitations established by law which are applicable alike to all citizens. That act forbade that membership of any particular class of citizens should justify or permit exclusion from the enjoyment of the facilities or accom-

modations designated by it. Except as thus restricted, the rights of proprietors of theatres remained as at common law. (L. 1895, ch. 1042.)

3. Nor do the changes in the language of the act made by the amendment thereto (L. 1913, ch. 265; Cons. Laws, ch. 6, §§ 40, 41) remove it from the effect of the decision of this court in *Grannan* v. *Westchester Racing Association* (153 N. Y. 449), holding that the legislature did not intend to confer upon every person all the rights, advantages and privileges in places of amusement or accommodation which might be enjoyed by another. Any discrimination not based on race, creed or color does not fall within the condemnation of the statute.

*Woollcott* v. *Shubert*, 171 App. Div. ——, affirmed.

(Argued January 5, 1916; decided February 22, 1916.)

APPEAL, by permission, from so much of an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 26, 1915, which affirmed an order of Special Term granting a motion by defendants for judgment in their favor upon the pleadings.

The following question was certified: "Does the complaint state facts sufficient to constitute a cause of action?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alfred A. Cook* and *Harold Nathan* for appellant. The exclusion of the plaintiff from defendants' theatres is forbidden by the express terms of the present Civil Rights Act. (*Collister* v. *Hayman*, 183 N. Y. 250; L. 1913, ch. 265, § 40; *Greenberg* v. *W. T. Assn.*, 140 Cal. 357.) The exclusion of the plaintiff from defendants' theatres is forbidden by principles of public policy. (*Aaron* v. *Ward*, 203 N. Y. 351; *Dean* v. *Clark*, 80 Hun, 80; *T. P. R. Co.* v. *G. L. I. Co.*, 60 N. J. L. 246; *Wakefield* v. *Van Tassell*, 202 Ill. 41; *People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180.) A theatre ticket is not under the law of this state a mere revocable license. (*Wood* v. *Leadbitter*, 13 M. & W. 838; *Hurst* v. *Picture Theatres*,

L. R. [1 K. B. 1915] 111; *Greenberg* v. *W. T. Assn.*, 140 Cal. 357; *Ex parte Quary*, 149 Cal. 79.)

*Charles H. Tuttle* and *William Klein* for respondents. At common law the theatre proprietor could admit or refuse whomever he chose; and a mandatory injunction compelling him to enter into a contract of admission was an impossibility. *A fortiori*, the plaintiff, coming not for personal amusement, but on the business of a newspaper, could have no cause of action either at law or in equity. (*People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180; *Aaron* v. *Ward*, 203 N. Y. 351; *Collister* v. *Hayman*, 183 N. Y. 250; *People* v. *King*, 110 N. Y. 418; *Luxenberg* v. *K. & P. A. Co.*, 64 Misc. Rep. 69; *Purcell* v. *Daly*, 19 Abb. [N. C.] 301; *Marrone* v. *W. J. Club*, 227 U. S. 633; *Wood* v. *Leadbitter*, 13 M. & W. 838; *Shubert* v. *Nixon Amusement Co.*, 83 N. J. L. 101; *McCrea* v. *Marsh*, 12 Gray, 211; *Burton* v. *Scherpf*, 1 Allen, 133; *Pearce* v. *Spalding*, 12 Mo. App. 141; *Johnson* v. *Wilkinson*, 139 Mass. 3; *Greenberg* v. *Western Turf Assn.*, 140 Cal. 357; *Taylor* v. *Cohn*, 47 Oreg. 538; *Meisner* v. *Detroit, etc., Ferry Co.*, 154 Mich. 545; *Buenzle* v. *Newport Amusement Assn.*, 29 R. I. 23; *Horney* v. *Nixon*, 213 Penn. St. 20; *W. W. V. Co.* v. *Black*, 113 Va. 728.) The Civil Rights Act as originally passed did not change the common-law rights of the proprietor of a theatre, except to forbid discriminations for reasons of class. It could give this plaintiff no cause of action. (*Grannan* v. *W. R. Assn.*, 153 N. Y. 449; *Aaron* v. *Ward*, 203 N. Y. 351; *Joyner* v. *Moore-Wiggins Co.*, 152 App. Div. 266; *People* v. *King*, 110 N. Y. 418; *Collister* v. *Hayman*, 183 N. Y. 250; *People ex rel. Burnham* v. *Flynn*, 114 App. Div. 578; 189 N. Y. 180; *Luxenberg* v. *K. & P. A. Co.*, 64 Misc. Rep. 69; *Shubert* v. *Nixon Amusement Co.*, 83 N. J. L. 101; *Donnell* v. *State*, 48 Miss. 661; *People* v. *King*, 110 N. Y. 1; *Conner* v. *Sylvester*, 13 Allen, 247.) There was nothing in the amendment of

the Civil Rights Law by chapter 265 of the Laws of 1913 which affected the foregoing principles and decisions, otherwise than favorably to the defendants. The context of the amendment, the re-enactment of the first and principal section almost verbatim, and the debates in the legislature, show that its purpose was to reach certain objectionable notices and advertisements by places of public accommodation as to the class of patronage solicited, in evasion of the law against class discrimination. (*People ex rel. Hunt* v. *Priest,* 90 App. Div. 520; 180 N. Y. 532; *People* v. *Palmer,* 109 N. Y. 110; *Bertles* v. *Nunan,* 92 N. Y. 152; *Grannan* v. *W. R. Assn.,* 153 N. Y. 449; *Civil Rights Cases,* 109 U. S. 3; *Connole* v. *N. & W. Ry. Co.,* 216 Fed. Rep. 823; *Ex parte Farley,* 40 Fed. Rep. 66; *Jennison* v. *Kirk,* 98 U. S. 453; *United States* v. *Wilson,* 58 Fed. Rep. 768.)

Collin, J. The primary question presented by the present appeal is, may the proprietor of a theatre lawfully exclude from it a person upon any ground other than that of race, creed or color ? The appellant asserts that the Civil Rights Act of this state, as amended in 1913, answers the question in the negative. The respondents assert that the act forbids the exclusion upon the ground of race, creed or color only.

The complaint alleges in effect: The defendants control and conduct many theatres. The plaintiff gains his livelihood as the dramatic critic on the staff of the New York *Times.* He wrote and the New York *Times* published a legitimate and proper criticism of one of the productions controlled by the defendants. It displeased the defendants and, therefore, they have excluded the plaintiff from one of their theatres and have refused to permit him to enter it upon the same terms as the general public. They have threatened to exclude him from all their theatres. Those acts of the defendants are wrongs against the plaintiff remediable at law only

through a multiplicity of actions, in which the penalties recoverable would inadequately compensate him. The complaint demands a judgment permanently restraining the defendants from continuing the acts. The defendants answered the complaint and subsequently applied to the court at Special Term for an order for judgment on the pleadings. The Special Term granted the order. The Appellate Division affirmed it and granted leave to appeal from its order of affirmance to this court.

The acts of the defendants were within their rights at the common law. At the common law a theatre, while affected by a public interest which justified licensing under the police power or for the purpose of revenue, is in no sense public property or a public enterprise. It is not governed by the rules which relate to common carriers or other public utilities. The proprietor does not derive from the state the franchise to initiate and conduct it. His right to and control of it is the same as that of any private citizen in his property and affairs. He has the right to decide who shall be admitted or excluded. His rights at the common law, in the respect of controlling the property, entertainments and audience, have been too recently determined by us to be now questionable. (*People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180; *Collister* v. *Hayman*, 183 N. Y. 250; *Aaron* v. *Ward*, 203 N. Y. 351.) Under the common law the rights of the plaintiff were not violated by the acts of the defendants.

These rights were restricted by the statute of 1895, commonly known as the Civil Rights Act (Laws of 1895, chapter 1042). It was entitled "An Act to protect all citizens in their civil and legal rights." It enacted:

"§ 1. That all persons within the jurisdiction of this State shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating-houses, bath-houses, barber shops, theatres, music halls, public conveyances on land and water, and all other places of public accommodation or

amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens.

"§ 2. That any person who shall violate any of the provisions of the foregoing section by denying to any citizens, except for reasons applicable alike to all citizens of every race, creed or color, and regardless of race, creed and color, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall for every such offense" incur the penalties as prescribed. We held that the purpose of the act was "to declare that no person should be deprived of any of the advantages enumerated, upon the ground of race, creed or color, and that its prohibition was intended to apply to cases of that character, and to none other. It is plain that the legislature did not intend to confer upon every person all the rights, advantages and privileges in places of amusement or accommodation, which might be enjoyed by another. Any discrimination not based upon race, creed or color does not fall within the condemnation of the statute." (*Grannan v. Westchester Racing Assn.*, 153 N. Y. 449, 465.) The reasons for our decision may be briefly stated: The act in its essential particulars is identical with the Federal act of 1875 which was construed by the Supreme Court of the United States. (*Civil Rights Cases*, 109 U. S. 3, 9.) The first section of the Federal act is:

"That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theatres, and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude." (18 Stat. L. 335.)

The Supreme Court said: "The first section, which is the principal one, cannot be fairly understood without

attending to the last clause, which qualifies the preceding part. The essence of the law is, not to declare broadly that all persons shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances, and theatres; but that such enjoyment shall not be subject to any conditions applicable only to citizens of a particular race or color, or who had been in a, previous condition of servitude." The qualification of the general restrictive language effected by the last clause of the first section of the Federal act inheres in the state act of 1895 by virtue of the last clause of its section 1, namely: " Subject only to the conditions and limitations established by law and applicable alike to all citizens." The qualification is not materially changed or modified by the different wording of the two clauses. The rights conferred by the act of 1895 are expressly made subject to any conditions or limitations established by law which are applicable alike to all citizens. The act forbade that membership of any particular class of citizens should justify or permit exclusion from the enjoyment of the facilities or accommodations designated by it. Except as thus restricted, the rights of the defendants as proprietors of their theatres were those existing at the common law.

The act of 1895 was placed in the Civil Rights Law (Cons. Laws, ch. 6) as sections 40 and 41. In 1913 (L. 1913, ch. 265) those sections were amended to read:

" § 40. All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages and privileges of any place of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages or privileges thereof, or directly or indi-

rectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed or color, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited. The production of any such written or printed communication, notice or advertisement, purporting to relate to any such place and to be made by any person being the owner, lessee, proprietor, superintendent or manager thereof, shall be presumptive evidence in any civil or criminal action that the same was authorized by such person. A place of public accommodation, resort or amusement within the meaning of this article, shall be deemed to include any inn, tavern or hotel, whether conducted for the entertainment of transient guests, or for the accommodation of those seeking health, recreation or rest, any restaurant, eating-house, public conveyance on land or water, bath-house, barber-shop, theater and music hall. Nothing herein contained shall be construed to prohibit the mailing of a private communication in writing sent in response to a specific written inquiry.

"§ 41. Any person who shall violate any of the provisions of the foregoing section, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to" the penalties prescribed.

The appellant asserts that the changes in the language of the sections made by the amendment removed those sections from the effect of our decision in the *Grannan Case* (153 N. Y. 449). Therein he errs. Rather is it true that the basis for that decision is broadened by them. The qualification of the comprehensive language of the first part of section 40, as it existed in the first section of the

act of 1895, and its effect are retained. While the appellant argued ably and earnestly to the contrary, it seems quite clear to us that the provision, "No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages or privileges thereof," is expressly qualified by the subsequent words "on account of race, creed or color." The qualification referred to is thus made more specific and emphatic.

In order that we should hold that the act of 1913 abrogated the common-law rights of the defendants existing at the date of its enactment, it must clearly appear that they are so repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory. (*Texas & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *People* v. *Palmer,* 109 N. Y. 110.) This general rule should not be relaxed in the consideration of a statute put forward as imposing restrictions upon the control or management of private property by the owner. The right of the defendants to control their theatres and to exclude persons from them, as restricted by the act of 1895, may exist with the act of 1913 even as it did under the former act. The language of the later act is not more inimical to it than that of the earlier. Its continued existence does not deprive the later act, as they did not the former, of its efficiency. It, therefore, subsists.

The purpose of the act as amended is to give greater efficacy to the policy of the original statute — to forbid the accomplishment of the discrimination barred by the statute, not only by a direct exclusion, but also by the indirect means specified. Such conclusion thoroughly satisfies its language. The purpose and policy of a statute are changed only by language expressly or through unavoidable implication effecting that result.

The respondents assert that the legislative debates dur-

ing the passage of and relating to the act of 1913 demonstrate that its purpose was that we have just stated. In construing a statute we have a right to consider relevant conditions existing when it was adopted. (*Bull* v. *New York City Ry. Co.*, 192 N. Y. 361, 373; *Matter of Jannicky*, 209 N. Y. 413, 418.) The particular mischief it was designed to remedy and the history of the period and of the statute itself may be considered. (*Wiley* v. *Solvay Process Co.*, 215 N. Y. 584, 588.) We are at liberty to study the debates in seeking and determining the evil against which it was aimed as a remedy. In case they clearly and definitely describe an unworthy or mischievous condition necessitating, in the legislative mind, the statute, they furnish the court, laboring to discover the intent of the legislature, with legitimate and trustworthy aid. As Blackstone tersely expressed it, in the interpretation of statutes due regard must be had to the old law, the mischief and the remedy. The mischief may be indicated or made apparent by the debates attending the adoption of the remedy, as well as by contemporaneous events and the relevant situation as it existed. (*Tap Line Cases*, 234 U. S. 1, 27; *Standard Oil Co. of N. J.* v. *United States*, 221 U. S. 1, 50; *Jennison* v. *Kirk*, 98 U. S. 453, 459; *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468, 473.) A court is at liberty, also, to invoke, as an aid in construction, the history of the passage of a statute, that is, the changes and proposed changes in the original bill, as recorded in the legislative journals. (*Blake* v. *National Banks*, 23 Wallace, 307; *Chesapeake & Potomac Tel. Co.* v. *Manning*, 186 U. S. 238.) It is established law, however, that the statements and opinions of legislators uttered in the debates are not competent aids to the court in ascertaining the meaning of statutes. (*United States* v. *Trans-Mo. Freight Association*, 166 U. S. 290, 318; *Dunlap* v. *United States*, 173 U. S. 65, 75; *Lapina* v. *Williams*, 232 U. S. 78, 90; *Omaha & C. B. Street Ry.*

*Co.* v. *Interstate Commerce Com.*, 230 U. S. 324, 333.) The Supreme Court of the United States has declared the rule that the formal reports of legislative committees relating to a bill in the course of progress are competent sources from which to discover the meaning of the language employed in a statute (*McLean* v. *United States*, 226 U. S. 374, 380; *Lapina* v. *Williams*, 232 U. S. 78, 90), but cannot be resorted to for the purpose of construing a statute contrary to its plain terms. (*Penn. R. R. Co.* v. *International Coal Mining Co.*, 230 U. S. 184, 199.)

The debates in the present case conclusively show that the cause which led to the passage of the act of 1913 was the practice of the proprietors of some of the places designated in the act to advertise or notify the public and individuals that the advantages and privileges of those places would be refused to persons on account of race or creed, thereby evading indirectly the effect of the act of 1895; that the practice was deemed disgraceful and mischievous and that the purpose of the act was to prohibit it as well as the denial of those advantages and privileges, on account of race, creed or color, to actual applicants for them — to forbid the proprietors of the enumerated places to preclude, on account of race, creed or color, the attempts contemplated, as well as to defeat for the same reason the attempts actually made for admission.

The part of the order appealed from should be affirmed, with costs. The question certified should be answered in the negative.

Willard Bartlett, Ch. J., Hiscock, Chase, Hogan, Cardozo and Seabury, JJ., concur.

Order affirmed.