## Million et al. *v.* Metropolitan Casualty Insurance Company et al.

[No. 13,886. Filed July 3, 1930. Rehearing denied December 2, 1930. Transfer denied February 2, 1933.]

*Hillis & Hillis* and *McInery & McInery,* for appellants.
*Seebirt, Oare & Omacht,* for appellees.

ENLOE, J.—The appellants furnished sand and gravel to the Highways Improvement Company, contractors, for the construction of a portion of State Road 30— Valparaiso-Plymouth Road—in Starke County, Indiana. The contract for the building of said road was made by the Highways Improvement Company with the State of Indiana, acting by and through the State Highway Commission, by John D. Williams, Director. To secure the performance of its said contract, said contractor, agreeable to §8285 Burns 1926, executed its bond with the appellee, the Metropolitan Casualty Insurance Company of New York, as surety thereon, conditioned, inter alia, that the said contractor would pay all lawful claims of materialmen, for materials furnished in the carrying forward and completing said contract, and expressly agreeing that said bond should be for the benefit of any materialman having a just claim against said contractor. This bond was duly approved and accepted by John D. Williams as Director said Commission.

This contract was let and said bond given under and in accordance with the provisions of §8285 Burns 1926, (§18 of the Highway Commission Act), in which section it is among other things provided: . . . Any person, firm or corporation to whom any money shall be due on

account of having performed any labor or furnished any material in the construction of such highway, *within one year after the acceptance thereof by the* duly authorized board of officers shall furnish the sureties on said bond a statement of the amount due to any such person, firm or corporation. No suit shall be brought against the sureties on said bond until the expiration of sixty days after the furnishing of said statement. If said indebtedness shall not be paid in full at the expiration of said sixty days, said person, firm or corporation may bring an action in his own name upon such bond, *said action to be commenced within one year from the date of the acceptance of said highway.*" (Our italics.)

It appears from the averments of the complaint, that the said construction contract was entered into in March, 1927, and the bond given as before noted; that the appellants furnished materials—sand and gravel—used in the construction of said road; that said road had been fully completed and had been accepted by the State, on December 15, 1928, and the final estimate thereon paid on that date. It also appears from said averments that the materials for which this suit was brought, were furnished in July and August of 1927, and that in February, 1928, the appellants filed with the State Highway Commission, in duplicate, a verified statement of their account, and that on March 20, 1928, a copy of the claim so filed was given to the said surety. The complaint, the basis of this suit, was filed February 11, 1929. A demurrer thereto for want of facts was sustained, hence this appeal. The only question to be considered is the sufficiency of the complaint.

The contention of the appellees is embodied in their memorandum filed with their said demurrer, one of the specifications of which is as follows: "Each paragraph of said complaint shows on its face that the plaintiffs herein were subcontractors who furnished materials en-

tering into the construction of said highway, but that the plaintiffs failed to comply with the terms of the statutes in said cases made and provided, in that the plaintiffs failed, within sixty days after the last item of material had been furnished by them, to file with the State Highway Commission duplicate verified statements of the amount due and owing by the contractor to them; the said plaintiffs, in failing to file such duplicate verified statements of the amount owing them, within the time required by statute, lost the right to proceed against the surety upon said contractor's bond."

In short, it is the contention of the appellees that the remedy given by section 2 of the act of 1911 (Acts 1911, p. 437) as amended by the act of 1925 (Acts 1925, p. 130), the same being §6122 Burns 1926, is the sole and only remedy of which a subcontractor, laborer or materialman may avail himself, as against the surety on such bond. On the other hand, it is the contention of the appellants that the remedy given by said act is optional, and that the remedy, as the same existed prior to said amendment of 1925, for a breach of such bond, still remains to such creditor, upon his compliance with §8285, *supra*.

Before the amendment of said act of 1911 by the act of 1925, this court had held in the cases of *Equitable Surety Co.* v. *Indiana Fuel Supply Co.* (1919), 70 Ind. App. 75, 123 N. E. 22, and *Illinois Surety Co.* v. *State, ex rel.* (1919), 69 Ind. App. 450, 122 N. E. 30, that the remedy given by said act was cumulative; that the right of action on the bond, as at common law, still remained. The question therefore, which we are now called upon to answer is—Did the amendment of 1925 take from the subcontractors, materialmen, and those performing any service in relation to or in connection with such construction, alteration, etc., as mentioned in said section as amended (§6122 Burns 1926), their right to bring suit

upon a contractor's bond, as such right then existed, for a breach thereof by failing to pay their just claim for labor performed or materials furnished?

It will be noted that by said act of 1911, it was provided in section 1, that the disbursing officer or officers should *withhold full payment* to the contractor, until such contractor had "paid to the subcontractor or subcontractors or laborers employed in such construction, all bills due and owing the same," and providing that if the money so retained should not be sufficient to pay claims in full, they should be prorated, and also providing that in cases where there was no dispute as to the amount of such claim the disbursing officer or officers should pay such claim, taking a receipt therefor, and that the amount so paid should be deducted from funds due the contractor. Said section also provided that said funds so held should be retained until such disputes as might arise as to amounts due were settled, when payment should be made.

By section 2 of said act it was provided that provision should be made in the construction contract for the withholding of funds to pay for labor, materials, and to subcontractors, and that the bond should be so conditioned as to render the sureties thereon liable for labor, materials, and to subcontractors, and said section then closed with a proviso, that laborers, materialmen and subcontractors should file their claims with the proper officer within 30 days after the labor was performed or materials furnished.

By section 3 of said act it was declared that said act should not be construed as repealing any other laws for the protection of laborers, subcontractors, or materialmen, but as being supplemental thereto. Said sections 1 and 2 were amended in 1925 (Acts 1925, p. 129, §§6121-6122 Burns 1926), but section 3 of said act of 1911 remained as at the time of its passage in 1911.

In *Atz* v. *City of Indianapolis* (1928), 87 Ind. App. 580, 158 N. E. 523, 524, this court said: "The general rule is that a court in arriving at the effect of an amendment to a statute must consider the amendment as a part of the original act, and the entire act as amended must be given the same construction as if the amendment had been a part of the original act," so that we have said section 3 of said original act remaining unimpaired by the act of 1925. *Blair* v. *Chicago* (1906), 201 U. S. 400, 26 S. Ct. 427, 50 L. Ed. 801; *Walsh et al.* v. *State* (1895), 142 Ind. 357, 41 N. E. 65, 33 L. R. A. 392.

The amendment of 1925 broadened said act as to the persons who might claim the benefits thereof by providing inter alia (section 2), that the bond given should be conditioned "for the payment by the contractor, his successors and assigns, whether by operation of law or otherwise, and by subcontractors, their successors and assigns whether by operation of law or otherwise, of all indebtedness which may accrue to any person, firm or corporation on account of any labor or service performed or materials furnished or service rendered as herein provided, in the construction, erection, alteration or repair of any such building, work or improvement, which shall include all road, highway, street, alley, bridge, sewer, drain, or any other public improvement of any nature or character whatsoever." Said section, as amended, then further provided that persons within said act, who had any claim against any contractor or subcontractor, should within sixty days after the completion of said work, or within sixty days after the last item of material was furnished, file with the proper officer or board, duplicate verified statements of their account, and, that a copy of such statement so filed, should be, at once, delivered to the surety on such contractor's bond. It then provided that no suit should be brought

on said bond within the thirty days following the filing of said account, and that no suit should be brought after the expiration of one year.

It is the contention of the appellees, as before stated, that the remedy given by this statute, to the persons named as being within the provisions thereof—contractors, subcontractors, materialmen, etc.—is exclusive of all other remedies—that it is the only remedy such persons have—and if they fail to bring themselves within the provisions of said act, they are entirely without remedy, as against the surety, to recover any thing that may be due them. And this contention they make notwithstanding the language of said section 3 above quoted. We shall examine this contention.

In the absence of said statute it must be conceded that all persons within the protection of said bond, as written, had an action at law—the common law action of debt—upon such bond, when a breach thereof arose, and so the question arises: Did the legislature, by the enactment of this statute, act of 1925, *supra,* intend to take away from the party his right to proceed under the provisions of the highway act, section 8285, *supra?*

In Bacon's Abridgement, Vol. 9, title "Statute," it is said: "In all doubtful, and where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law farther or otherwise than the act expressly declares; therefore, in all general matters, the law presumes the act did not intend to make any alteration; for, in the parliament had had that design, they would have expressed it in the act," citing 11 Mod. 150. In the same chapter, Bacon also speaks of some statutes being given an equitable construction, and says that such construction is sometimes given to *remedial* statutes, where the mischief

sought to be remedied is within the meaning, but not within the letter of the statute because the law makers could not set down every case in express terms, but he then adds: "statute which is to take away a remedy given by the common law ought never to have an equitable construction," citing *Hammond* v. *Webb* (1795), 10 Mod. 282. This author also says, in discussing the same subject: "It is a maxim of law, that *an affirmative statute does not take away the common law,*" as "If a statute, without any negative words declares that deeds shall have, in evidence a certain effect, provided particular requisites are complied with, this does not prevent their being used as evidence, though the requisites are not complied with, in the same manner as they might have been before the statute was passed." He also says: "Although an affirmative statute does not take away the common law, it is nevertheless binding; and a party may take his election to proceed upon a statute or at common law."

In *Bandfield* v. *Bandfield* (1898), 117 Mich. 80, 75 N. W. 287, 288, 40 L. R. A. 757, 72 A. S. R. 550, it was said: "The legislature should speak in no uncertain manner when it seeks to abrogate the plain and long established rules of the common law." It is a fundamental rule that statutes in derogation of common right are to be strictly construed, and this is especially so when such statute attempts to take away or deprive a person of a right existing at common law—a "common right." *Webb, etc.,* v. *Baird* (1854), 6 Ind. 13. A "common right" is a right which pertains to the citizens by the common law, the investiture of which is not to be looked for on any special law, whether established by a constitution or an act of the legislature. 3 Kent Comm. 459. Lord Coke says (Coke Inst. 142a) that a common right is a right given by the common law, "because the common law is the best and most common birthright

that the subject hath for the safeguard and defense not only for his goods, lands, and revenues, but for his wife and children." Under the common law, when a contractual bond was given, the obligee or beneficiary or beneficiaries therein had a right of action thereon whenever such bond was broken, and this right, so given by the common law, was a common right.

In *Woollcott* v. *Shubert* (1916), 217 N. Y. 212, 111 N. E. 829, 831, L. R. A. 1913E, 248, Ann. Cas. 1916B, 726, it was said: "In order that we should hold that the act of 1913 abrogated the common-law rights of the defendants existing at the date of its enactment, it must clearly appear that they are so repugnant to the act, or the part thereof invoked, that their survival would, in effect, deprive it of its efficacy and render its provisions nugatory." See, also, *Texas & P. Ry. Co.* v. *Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; *People* v. *Palmer* (1888), 109 N. Y. 110, 16 N. E. 529, 4 Am. St. Rep. 423. When a remedy is given *either by statute or by common law* such remedy is never to be taken away by mere implication. It must be by express enactment, or by repugnance, as above noted.

With the foregoing rules in mind we now come to the examination of said sections 6121 and 6122 Burns 1926. We find that said sections are affirmative in character; that they contain no express words denying to the beneficiary or beneficiaries in such bond an action on such bond, for a breach thereof, as such remedy then existed; that there are no express words of repeal therein, but on the contrary, an express declaration in section 3 of said act (§6123 Burns 1926), that said act should be supplementary to existing laws. Also, it will be noted that said contract was let and said bond given under and in accordance with the provisions of the act creating the State Highway Commission (Acts 1919, p. 119, §8268

et seq. Burns 1926) and that in said act it is provided (§17, §8284 Burns 1926) that the person or persons furnishing labor, materials, etc., should give notice to the sureties on such bond *within one year after the acceptance of such work by the State*. The above act was a special act, creating the highway commission and defining its powers, etc., and it is a fundamental rule of construction that "special acts" are not repealed or modified by "general acts," by implication. It is held that a general act "repealing all laws inconsistent therewith," refers to general laws, and does not change or repeal "special laws." *Morris & E. R. Co.* v. *Miller* (1863), 30 N. J. L. 368, 86 Am. Dec. 188; *State* v. *South Kingstown* (1893), 18 R. I. 258, 27 Atl. 599, 22 L. R. A. 65. And we therefore conclude that under the law as it now stands, the beneficiary of such bond has a choice of remedies: He may, if he shall so desire, follow the provisions of said act of 1911, as amended in 1925, and thereby, in effect, "impound" the funds which are then or may thereafter become due the contractor, in the hands of the disbursing officer or agent or body, to thereby the better secure his claim. If he shall elect to proceed under the provisions of said act, as amended, and shall comply therewith by filing in duplicate his verified claim, as therein provided, then and in that event, having so elected and so thereby "impounded" the funds, he is limited to the provisions of said act, as to his remedy.

It is urged that the statute under consideration in this case falls within the rule that, where a statute creates a new right and prescribes the remedy for an invasion thereof, such remedy is exclusive and none other can be asserted.

While the rule above stated is well settled, yet, we think it has no application in this case. In *Lang* v. *Scott* (1825), 1 Blackf. 405, 12 Am. Dec. 257, it was

said: "If a statute is introductory of new rights which did not exist before in this country, and prescribes a penalty for their violation, the persons claiming under the act must depend, for the security of the rights thus claimed, upon the provisions therein specified. When there is a pre-existing right at common law, and an affirmative statute intervenes inflicting a new penalty, the law is otherwise. The exclusive privileges of ferries were not known here until they were authorized by statute; and the statute by which they are authorized prescribes a specific penalty for their violation. Upon the provisions of the act, therefore, the owners of ferries must rely for the security of their rights, so far as the courts of common law are concerned."

Did the statute under consideration create a new right? Or did it simply create a new remedy?

The bond in question was a statutory bond—one the giving of which the statute required, and the provisions of which were fixed by statute. It had long been the law in this state, prior to the enactment of the act now under consideration, that any beneficiary within the provisions of a statutory bond had a right of action thereon, at law, for any breach thereof to his damage as such beneficiary. The books are full of cases where action had been brought, by beneficiaries, upon bonds of saloon keepers, contractors, public officials, et al. These were all actions at law. As to statutory bonds, the law requires their execution, prescribes their form, the conditions to be therein inserted, and the beneficiaries thereof. The two dominant features of the act now in question are, (1) the broadening of the class of persons who could claim thereunder as beneficiaries, and (2) providing a method whereby funds accruing to the contractor, under his contract, might be, in effect, "impounded" and subjected to the payment of the debt of such claimant. Let us suppose that the provision relating to the

"impounding" of the funds had been entirely omitted from said act, and that the only legal effect thereof, upon the then existing law, was the broadening of the list of persons who might claim thereunder as being beneficiaries under said bond, would it be contended for a moment that no action could be maintained upon said bond, by any beneficiary thereunder, where there had been a breach of said bond, to the damage of said beneficiary? This especially in view of the provision of said section 3 of said act. As it seems to us, a statement of the question carries an answer. We may concede that the act in question, as the same now stands, gives to the subcontractor, laborer, and materialman a *new right*—the right to *impound the fund,* and if any such of the said beneficiaries of said bond should desire to impound the fund, then, and in that event, the statute in question provides the sole remedy for attaining that end, and it must be followed, but we find nothing in the statute, especially in view of said section 3 thereof, which requires that said fund *shall be impounded* as therein provided for; the beneficiaries of such bond are left to their own choice of remedies.

We conclude that as appellants had complied with section 8285, *supra,* the court erred in sustaining said demurrer and the judgment is reversed with directions to overrule said demurrer and for further proceedings.

Nichols, J., dissents.

## DISSENTING OPINION.

NICHOLS, J.—Dissents. I do not agree with the majority opinion in this case and therefore I must dissent. It is not accurate to say that the contract was let and the bond given under §8285 Burns 1926, but rather as such section was supplemented by §§6121 and 6122, Burns 1926, which sections were not in conflict with appellant's rights as defined in §8285, but supplemental

thereto. Section 6122, *supra*, expressly provided for the bond in suit and which is under consideration, and its terms and conditions, and hence it is a statutory bond made and executed pursuant to the statutory requirement. The act itself pertains to a new right created by statute, that of the construction of public works such as here upon certain statutory terms and conditions. The rule is thus stated on page 917, Vol. 2, Lewis' Southerland Statutory Construction: "Since the statute creates and regulates, there is no ground for claiming or proceeding except according to it. In other words, where a statute creates a new right and prescribes a particular remedy, such remedy must be strictly pursued and the party is confined to that remedy." Numerous authorities are cited to sustain the rule. I am wholly unable to understand how the writer of the majority opinion, whether he considers the 8285 section or the 1925 act, can find any comfort in *Lang* v. *Scott* (1825), 1 Blackf. 405. There was no provision in the common law, such as created here by statute, for the construction of public works. The provisions in the statute here involved, pertain to a new right—that of the construction, etc., of any public work, with an adequate remedy for its violation, and the Lang case expressly holds that: "If a statute is introductory of new rights which did not before exist in the country, and prescribes a penalty for their violation, the persons claiming under the act must depend, for the security of the rights thus claimed, upon the provisions therein specified."

In *Butler* v. *State* (1855), 6 Ind. 165, 168, the court, approving *Lang* v. *Scott, supra,* thus states the rule: "When a new right is introduced, and the remedy for its violation is prescribed by statute, the party complaining of such violation is confined to the statutory remedy."

In *Zellers* v. *State* (1856), 7 Ind. 659, the court says: "The rule is settled that where the statute makes that

unlawful which was lawful before, and appoints a specific remedy, that remedy must be pursued and no other."

In *The City of Greencastle* v. *Allen* (1873), 43 Ind. 347, it was held that where a city, organized and acting under the general law, makes a contract for the improvement of a street at the expense of the property owners, and the contractor does the work in whole or in part and the engineer refuses to make an estimate, and the council refuses to issue precepts on the proper application against the property owners, a suit cannot be maintained by the contractor against the city for damages, which would be a common-law remedy, but that in such case the proper remedy is the statutory one of mandate to compel the engineer and council to perform their duties.

In *Storms* v. *Stevens* (1885), 104 Ind. 46, 37 N. E. 401, a ditch was constructed by the county commissioners under §§4285 et seq., R. S. 1881; appellant bought the share allotted to appellee and received a certificate therefor as provided, and he thereafter brought suit in the court to enforce against appellee's land the lien created. The statutory mode of collecting was by placing the amount upon the tax duplicate to be collected as other taxes are collected. The court held that if the statute provides a mode of collection, that is exclusive and must be pursued. The court, following *Lang* v. *Scott, supra,* stated that the statute created a new right and that where such new right is so created and a mode of enforcing it provided, that mode must be pursued to the exclusion of all other remedies.

In *Boys* v. *Simmons* (1880), 72 Ind. 593, the court said that: "Appellant's suit was purely a statutory proceeding, as without the statute he could surely not maintain such suit. In such a case the appellant must

state such facts in his complaint as would clearly entitle him to the statutory remedy, . . . for, in a suit authorized by and brought under the provisions of a statute which gives a certain and specific remedy in a given case, the facts stated in the complaint must be sufficient to bring the case within the purview of the statute, and to entitle the complaining party to the remedy or relief therein provided."

The case of *Board, etc.,* v. *Adler* (1922), 77 Ind. App. 296, 133 N. E. 602, 603, involved the recovery by suit, of taxes which had been illegally collected and the court stated that: "The rule is that, where the legislature creates a right and prescribes a remedy or method whereby the right may be enforced, the statutory remedy is exclusive."

In *Victory* v. *Fitzpatrick* (1856), 8 Ind. 281, the action was for damages for trespass on appellant's land, which was a common-law remedy and the court held that the action could not be sustained for the reason that the statute provided a mode of redress and it must be followed.

In harmony with the case of *Victory* v. *Fitzpatrick, supra,* in *McCormack* v. *Terre Haute, etc., R. Co.* (1857), 9 Ind. 283, the court held that: "Where the statute authorizes property to be taken, and points out a specific mode by which, and a particular Court in which, redress shall be sought, the statutory remedy must be pursued."

In *Martin* v. *West* (1856), 7 Ind. 659, the court held that: "By the above section 10, a new right of action is introduced, one that did not exist at common law. The statute points out the rule of proceeding, namely, by suit on the bond. It follows that the plaintiff having failed to adopt the remedy thus prescribed, is not entitled to recover."

In *Couchman* v. *Prather* (1904), 162 Ind. 250, 70 N. E. 240, 241, the court said that: "So far as a remedy

by way of damages is concerned, the rule is that when a new right is conferred by statute, and an adequate provision for its enforcement is therein made, the statutory remedy is exclusive."

In *Boyd, Admr.,* v. *Brazil Block Coal Co.* (1900), 25 Ind. App. 157, 57 N. E. 732, 734, the action was to recover damages for the benefit of the children of John W. Elliott, deceased, who died from personal injuries sustained in a coal mine, the court holding that the action could not be maintained by the administrator, but that under the statute it must be maintained by the widow, stated the rule to be that: "When a new right or proceeding is created by statute, and a mode prescribed for enforcing it, that mode must be pursued, to the exclusion of all others."

In *Brown* v. *Kemp* (1919), 71 Ind. App. 281, 124 N. E. 777, 778, which was an action by the widow as administratrix of the estate of Nathaniel Kemp for damages for the death of her husband, resulting from injuries suffered when intoxicated from liquors unlawfully sold to him, this court, speaking by McMahan, J., stated that: "Nothing is better settled than that when the Legislature specifically prescribes an adequate legal remedy, that alone is open to the litigant."

It seems to me that from these authorities it is well established in this state that where a right or proceeding is established by statute and the statute so creating it provides a legal remedy for its enforcement, such remedy is exclusive of all other remedies. To the same effect, I cite: *James* v. *Atlantic Delaine Co.* (1875), Fed. Cas. No. 7179; *People* v. *Craycroft* (1852), 2 Cal. 243, 56 Am. Dec. 331; *Andover, etc., Corp.* v. *Gould* (1809), 6 Mass. 40, 4 Am. Dec. 80; *Chesley* v. *Smith* (1817), 1 N. H. 20; *Moies* v. *Sprague* (1870), 9 R. I. 541; *Richardson* v. *Peoples, etc., Co.* (1906), 28 Ky. Law Rep. 919, 92 S. W. 284, 285; *Haines* v. *Fearnley* (1911),

51 Col. 317, 117 Pac. 162; *State, ex rel.,* v. *Mississippi, etc., Co.* (1908), 209 Mo. 472, 108 S. W. 97; *Lewisburg Bridge Co.* v. *Union and Northumberland Counties* (1911), 232 Pa. 255, 81 Atl. 324; *Clancy* v. *Board, etc.* (1912), 150 Wis. 630, 138 N. W. 109; *Schmidt* v. *City of Milwaukee* (1912), 149 Wis. 367, 135 N. W. 883; *Singer, etc., Co.* v. *Teasley* (1917), 198 Ala. 673, 73 So. 969; *Nash* v. *Inhabitants of Sorrento* (1919), 118 Me. 224, 107 Atl. 32; *Osgood* v. *Names* (1921), 191 Ia. 1227, 184 N. W. 331; *Cook* v. *Lehigh Valley R. Co.* (1920), 181 N. Y. S. 217; *Bailey* v. *Colleen Products Co.* (1923), 120 Misc. Rep. 297, 198 N. Y. S. 418; *Van Buskirk* v. *Red Buttes, etc., Co.* (1916), 24 Wyo. 183, 156 Pac. 1122, 160 Pac. 387.

If, as the majority opinion contends, appellants may enforce a common-law liability as they have attempted to do in this case, still they cannot prevail in this action. That the bond in suit is a statutory bond, given to meet the requirements of the statute in a statutory proceeding, is beyond contention. Such being the case, the provisions of the statute requiring the bond, enter into and become a part of it, whether written into it or not, and constitute the contract upon which both the rights and the liabilities are to be determined. *United States, etc., R. Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984. It follows that the bond sued upon is the same as if it had contained the provisions as to the duties required of appellants as to the method and time of filing their claim, and as to the provision that unless the action is commenced within one year after the filing of their verified duplicate statement, which must be filed within sixty days after the last item of material shall have been furnished, as appears in Sec. 2 of the act involved, being §6122 Burns 1926, it shall be barred. The provisions are in the bond and a part of it just as much as if they had been written

therein, and if appellants would avail themselves of the provisions of the bond including the time within which suit must be brought, they can only do so by complying with its conditions, which includes, of course, the condition as to the time of bringing the action as provided by statute. The condition as to the time within which suit must be brought is a limitation, not upon the right of action, but the time within which the right might be exercised and this is true whether the liability which appellants would enforce is a common-law liability or a statutory liability. Nothing is better settled than that if one seeks to avail himself of the provisions of a bond, he must do so on the conditions named in it. *Knight & Jillson Co.* v. *Castle* (1909), 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573.

This question has been considered and decided in *Zeidler Concrete Pipe Co.* v. *Ryan* (1928), 205 Iowa 37, 251 N. W. 801, 802. In that case, the controlling question concerned the failure of the subcontractor to file a verified itemized statement of its claim against the principal contractor with the city clerk within four months after the last item of material was furnished for a certain public work as provided by the statute, and the neglect of the claimant to bring an action on the bond of the principal contractor succeeding the completion of the public improvement as required by the statute. The bond there involved provided that no action should be brought on said bond after six months after the completion of any public improvement or building, and further provided that a verified itemized statement of the claim should be filed with the city clerk, county auditor or secretary of the school board, as the case might be, within four months after the last item of material was furnished or labor performed. It was there held that the case was barred as against the surety company for two reasons: That the action was not brought within the

time required, and that the verified itemized statement was not filed until long after the four-month limitation within which it was required to be filed. The court said: "There is no escape from the mandates contained in the act, and those limitations and essentials become a part of the bond, and are conditions prerequisite to a recovery thereon." The court further held, against the appellant's contention, that a common-law liability could not be maintained against a surety on a statutory bond, saying that public policy was involved.

This seems apparent to me, for, if as appellants contend, they can ignore the plain provisions of the statute as to the limitation of time within which suit may be brought on the bond, thereby extending the time within which suit may be brought, to ten years as provided in the general statute of limitations, the principal contractor within such time may die, or become insolvent and the property which would otherwise be available to protect the surety might be dissipated. Certainly those who might be requested to become sureties under such conditions would hesitate to do so. Further, if sureties, under terms of the statutes, have notice, by filing of the claims as required therein, that the principal has failed to pay for materials furnished or labor performed, by timely action they might be able to protect themselves, while without such notice, their remedy might be lost.

The proceeding to build a highway, here involved, and this action growing out of it, were both subsequent to the enactment of Chap. 44 of the Acts of 1925, being the act here involved, in which act there is clearly a specific legal remedy given, for the enforcement of a statutory right, and such being the case, that remedy alone is open to the litigant.

There is a marked difference between Secs. 1 and 2 of the 1925 act and the sections which they amend,

being Secs. 1 and 2 of Chap. 173 of the Acts of 1911, and this difference clearly distinguishes from this case, the cases of *Equitable Surety Co.* v. *Indiana Fuel & Supply Co.* (1919), 70 Ind. App. 75, 123 N. E. 22, and *Illinois Surety Co.* v. *State, ex rel.* (1919), 69 Ind. App. 450, 122 N. E. 30, both of which cases were decided in 1919, which was, of course, subsequent to the 1911 act and prior to the 1925 act mentioned above, and in the majority opinion.

In the Illinois Surety Co. case, the court stated that by virtue of the 1911 act and the contract, the relator might have secured its claim by filing it with the board of commissioners as provided in the act, but that such procedure was not exclusive, and that there was nothing in the statute, nor in the contract, for the performance of which the bond was given, that made it obligatory upon the relator to file its claim with the board of commissioners, such procedure being a mere privilege of which the relator might avail itself at its option. But §2 of the Acts of 1911 provided that the contract and bond to be given by the contractor should be conditioned that the sureties thereon should be liable for labor, and for material to subcontractors. The whole act pertained only to a method of impounding the fund, and was supplementary to, and not in conflict with, other laws for the protection of labor, and the bond with its statutory conditions was a statutory bond and not a common-law bond. Clearly, under this statute, the relator might have pursued the remedy of filing its claim with the board of commissioners as provided in the statute, or if it did not choose to adopt that remedy, it, regardless of the statute, and without limitation so far as required by that statute, had its right of action on the bond, and if such bond did not have written therein the provisions of the statute above referred to, the law read them into it just as much as

if they had been written therein, and the litigants were bound thereby. There was only one bond on which the relator could have brought that action and that was the one provided by statute. And in the Equitable Surety Company case, if the appellee chose to pursue the remedy of filing its claim with the board of commissioners and of relying upon the payment thereof through that channel, it had the right and privilege so to do, but there was nothing in the statute that required appellee, in the event that it chose to adopt the remedy of a suit on the bond, to file its claim within thirty days after the passage of the act or within sixty days after the completion of the work. That provision in Sec. 2 clearly is a requirement for the impounding of the fund. Without taking that step it had its right of action upon the bond for which the statute provided, which was, of course, a statutory bond, subject not only to the terms and stipulations therein, but as well, to the provisions of the statute which must be read into it.

Another case equally as forceful as the *Zeidler Concrete Pipe Company* v. *Ryan* case, *supra*, is that of *Republic, etc., Co.* v. *Patillo* (1912), 19 Cal. App. 316, 125 Pac. 923. If its reasoning and decision are followed in this case, there can be no recovery. Because of the length of this dissenting opinion, I shall not discuss it further than to state that the court held that the bond there involved, having been given as a statutory bond, could not be considered as a common-law obligation, citing authorities to sustain its holding.

The majority opinion as to special acts and general acts can have no application to this case. Even if it be conceded that the general highway act is a special act, and I do not so concede, it is clear that Chap. 44 here under consideration, was intended to apply to *all contracts for the construction of public works*. If it has no application to the circumstances of this case, I can

think of no situation where it would have application, and it would seem that the legislature accomplished nothing, so far as actions on contractors' bonds and the limitation of time within which actions might be commenced thereon are concerned.

I am fully convinced that a common-law remedy is not available to appellants in the case, and that appellants, having brought their actions upon the bond provided by statute, they can only recover when they have complied with the terms of such statutory bond together with the provisions of the statute which by law are read into it, and that the judgment should be affirmed.