CITY OF BUFFALO, Respondent, *v.* ROADWAY TRANSIT COMPANY et al., Appellants.

Fourth Department, March 20, 1951.

*Smith, Miller, Murphy & Roberts* for Roadway Transit Co., appellant.

*Louis W. Manchester* for Alfred B. Dexter, appellant.

*Fred C. Maloney, Corporation Counsel (Herbert B. Forbes* and *Elmer S. Stengel* of counsel), for respondent.

*Per Curiam.* The Zoning Ordinance was adopted by the Common Council of the City of Buffalo on December 16, 1925, and became effective January 16, 1926. We agree with the findings of the Official Referee that prior to January 16, 1926, and thereafter to October 10, 1946, the premises were used for a public garage and that such use was a conforming use in a business district. We disagree with the finding that since October 10, 1946, the premises have been leased and used as a " truck and freight terminal " as those words are used in the ordinance and as the meaning of those words is construed as of the time of the adoption of the ordinance in 1925. It follows that we do not agree with the conclusion that such use is in violation of the ordinance of 1926. A zoning ordinance, being in derogation of the common law, must be strictly construed.

In *Matter of 440 E. 102nd St. Corp.* v. *Murdock* (285 N. Y. 298, 304) the court said: " Zoning laws which curtail and limit

uses of property confer no privilege upon property owners. Even though in case of necessity such laws are properly within the exercise of the police power, the whole and each and every of the parts must be given a strict construction since they are in derogation of common-law rights (*People ex rel. Ortenberg* v. *Bales*, 224 App. Div. 87; affd. 250 N. Y. 598; *Matter of Multiplex Garages, Inc.,* v. *Walsh*, 241 N. Y. 527; *Wood* v. *Tunnicliff*, 74 N. Y. 38, 43; *Woolcott* v. *Schubert*, 217 N. Y. 212, 220). The provisions of the resolution may not be extended by implication (*Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339)."

The ordinance says nothing of a " truck " terminal and we do not find that such use is prohibited but rather that such designation is equivalent to a public garage which is permitted in a business district. A " freight terminal " is, by the terms of the ordinance, permitted in an industrial district and would be a prohibited use in a business district. In construing what the Common Council meant by use of the words " freight terminal ", we must look to the context of the ordinance and define the words in the light of what they obviously meant and were intended to mean according to common sense and understanding in 1925, not in 1946. We do not think the Common Council had in mind at that time nor could have had in mind in 1925 that a " freight terminal " included the use of a large garage building for the storage of trucks or other motor vehicles even where goods were taken from some trucks and transferred to others for delivery. In subdivision (7) of section 18 of the ordinance, the words " Freight terminal " are immediately followed by the words " Railroad yards ". The council associated " freight " with " railroad " and we think the words " freight terminal " as then used, according to common speech and understanding, meant and intended to mean a " railroad " freight terminal — a facility for the loading and unloading and transporting of freight by rail. The use of a large motor vehicle garage building was clearly not within the contemplation of the council in 1925 as being a " freight terminal " and was not within the definition of a " freight terminal " as the words were employed over twenty-five years ago. At that time, the word " freight " meant the cargo of a vessel or of a railroad car. Freight transportation was " specifically the ordinary transportation of goods afforded by a common carrier (especially a railroad company) not including either the calling for or delivery of the goods as distinguished from that called express ". The word " terminal " was defined: " Railroads.

Pertaining to a railroad terminal; connected with the receipt or delivery of freight." (See Webster's International Dictionary — 1927.) We further hold that the use of the premises, as disclosed by the evidence, is not a noxious or offensive use within the meaning of the ordinance. The ordinance intended to prohibit a use which was inherently and necessarily noxious and offensive by reason of dust, odor, gas, smoke, fumes and vibration; not a permitted use, the manner of conducting of which might become offensive if not properly done. If the permitted use becomes offensive by reason of the manner and method in which the business is conducted, then other remedies are available to persons injured against the person offending.

The judgment should be reversed on the law and facts, with costs, and the complaint should be dismissed, with costs.

All concur, except TAYLOR, P. J., who dissents and votes for affirmance. Present — TAYLOR, P. J., McCURN, VAUGHAN, KIMBALL and PIPER, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact disapproved and reversed and new finding made.