Breitel, J. (dissenting).
Upon a showing that a witness to a homicide believed she had seen the killer, a fellow-patient, in the waiting room of a methadone clinic, the Appellate Division sustained a subpoena duces tecum to produce photographs of certain patients from the files of the clinic for the witness to view under carefully circumscribed conditions. The court order was authorized under a Federal statute controlling the confidentiality of patient records which provides in part:
“ (b) (2) If the patient * # * does not give his written consent, the content of such record may be disclosed as follows :
* * *
“ (0) If authorized by an appropriate order of a court of competent jurisdiction after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.
“ (c) Except as authorized by a court order granted under subsection (b) (2) (0) of this section, no record referred to in *391 subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient. ’ ’ (U. S. Code, tit. 21, § 1175.)
The effect of thé statute is to place in the court the sole power to disclose a patient’s record after balancing the several interests involved. That is what it says. There are no qualifications. It does not give any primary or secondary role in the disclosure to the program officials or to supervisory administrators.
Ordinarily, one would look no further to legislative history because the meaning is patent. However, resort to the legislative history, even if some might regard such resort as unnecessary in the face of the statutory language, produces the same result.
This section is part of comprehensive Federal legislation entitled The Drug Abuse Office and Treatment Act of 1972 controlling drug treatment and rehabilitation programs. If the proper interpretation of a statute is in doubt, reference may be made to changes and proposed changes of the bill during its passage to determine the legislative intent (Woollcott v. Shubert, 217 N. Y. 212, 221; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 125, esp. p. 258). A preliminary draft bill of this law, introduced in the Senate on June 18, 1971, contained no provision for the confidentiality of methadone patients’ records (117 Cong. Rec. 20786-20787). The bill was amended in committee providing that the records were to be confidential, and precluding their use by prosecutors (Sen. Rep. Nos. 92-486, 92-509). The House version of the bill had no confidentiality provision.
The law enacted was a compromise drafted by the House-Senate Conference Committee (Conf. Rep. No. 92-920). It included a confidentiality clause with the provision quoted above, incorporating an idea expressed by Senator Hruska, allowing patients’ records to be subpoenaed by court order (117 Cong. Rec. 44069).
The Federal regulation relying on a 1970 statute would not have permitted the disclosure ordered in this instance. True, the regulation states (37 Federal Register 24639) that “Nothing in either the language or the legislative history of the [1972] Act indicates any intent on the part of Congress to amend the provisions of the 1970 Act or to reduce the protection which can *392 be afforded under them ’’’, and this interpretation is entitled to considerable weight. But this interpretation is not controlling where Congress spelled out its intent to enact a new comprehensive scheme expressly permitting courts to order limited disclosure on good cause shown (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 129, subd. [b]).* The new scheme is designed to give maximum protection to ‘‘ civil liberties ’ ’ and to ‘ ‘ the success of the treatment programs ’ ’ without an ‘ ‘ unnecessary restriction on possible prosecutions” (Senator Hruska, 117 Cong. Rec. 44069, supra; Representative Mikva, 118 Cong. Rec. H710 [Daily ed. Feb. 3, 1972]).
In sum, given the plain language of the statute and the equally plain supporting legislative history, judicial control over the confidentiality of patients’ records in the program is established. The recent postenactment gloss on the legislative intention by the administrative officials is of no significance, especially when it is contradictory of the language of the statute. It was quite wise for the Congress to leave the matter in the discretion of the courts, rather than with the director of the program, with the mandate to serve the policy of the legislation and yet protect innocents and the larger public policy of the State. Even if ambiguous language were involved, one should hesitate to ascribe a meaning to it which may very well mean in this ease that a murderer should go free. I would make no such ascription because the language is quite clear, and I would not unless the language, the legislative history, or long continuous administrative construction compelled it.
*393 Accordingly, the order of the Appellate Division should be affirmed.
Judges Bueke, Jokes and Wachtleb concur with Chief Judge Fuld ; Judge Bbeitel dissents and votes to affirm in a separate opinion in which Judges Jasek and G-abbielli concur.
Order reversed, without costs, the adjudication of contempt vacated and the motion to quash the subpoena granted.

 The McKinney’s text states the rule as follows:
“ Generally, a court should not hide behind the ruling of an administrative officer or agency and thus escape the duty to interpret the statute, since the court is the final arbiter as to the proper construction. In other words, a court should not blindly follow the rulings of administrative officers in construing statutes. Even though practical construction by an officer or agency charged with administration of a statute, especially when followed by a long period of time, is entitled to great weight and may not be ignored, such an interpretation is not necessarily binding on court.
“If an act is not ambiguous, there is no room for the doctrine of practical construction, for the courts must effectuate the plainly expressed intention of the Legislature without regard to the opinion of public officers. * * *
“ In any event, doubtful meaning of a statute cannot be clarified or aided by practical construction of officers unless it first appears that such construction has been long established and continuous.”