*732 OPINION OF THE COURT
Charles E. Ramos, J.
The petitioner landlord has commenced this summary holdover proceeding to recover possession of premises used by the respondent as a parking garage. The petitioner seeks to terminate the tenancy contending that the respondent has defaulted in the performance of a substantial obligation of the lease, which default was allegedly not cured within the time limits set forth in the lease.
On July 30, 1983, the parties entered into a 20-year lease pursuant to which the respondent would operate a parking garage at 2101-2115 Broadway, the "Ansonia”. At the time the lease was executed, no garage existed. Once the lease was signed, the garage was constructed, work was completed in 1984, and a certificate of occupancy (C/O) issued on December 28, 1984.
On January 4, 1985, the respondent applied for, and obtained, a license from the Department of Consumer Affairs to operate a parking garage. That license provided for parking on an hourly, daily, weekly or monthly basis. It has not been canceled or amended.
Shortly after operation of the parking garage had commenced, the Department of Buildings (the Department) received complaints from residential tenants of the Ansonia. By letter dated February 15, 1985 the Department notified the petitioner landlord, but not the respondent tenant, that the operation of the garage was "contrary to the Certificate of Occupancy and the 'Zoning Resolution.’ ” The petitioner was directed to cease "illegal” operations within 10 days. The petitioner was further notified that if the operation of the parking garage did not comply with its requirements, it would consider taking steps to revoke the C/O for the parking facility, in its entirety.
On February 28, 1985, approximately two weeks after the date of the Department’s letter, the petitioner forwarded a copy of it to the respondent.
On March 21, 1985, the Department issued a violation on the premises which specified the Department’s objections. It stated in part: "The cellar parking area of the above premises is being used for the parking of motor vehicles other than tenant owned and on less than a one week basis contrary to Certificate of Occupancy #86624.”
*733 Only the petitioner landlord was served with this violation, and it never contested its validity.
On April 4, 1985, the petitioner, without specificity and without enclosing a copy of the violation, advised the respondent in writing that it was in violation of paragraphs 15, 52, 53 and 62 of the lease. The respondent was also advised it had five days to cure by “ceasing to rent the garage for terms less than one week and otherwise complying with the terms of the C/O and other applicable laws, rules and regulations.”
The Department contended that the violation was not corrected. This prompted the petitioner to commence this proceeding to terminate the lease, evict the respondent and thereby (hopefully) to protect its C/O.
The petitioner contends that the issuance of the violation by the Department is conclusive proof that the respondent’s manner of operating the parking garage is in violation of the C/O and the applicable zoning resolution.
The respondent contends that the issue of the validity of the violation has never been decided, that it is not estopped by reason of the petitioner’s failure to contest the violation and that its manner of operating the garage is in conformity with the C/O.
In the ordinary course of events, the Department would have sought to impose fines or obtain an injunction with regard to a continuing violation; however, it has taken the unusual step, as threatened in its letter of February 15, 1985, of proceeding before the Board of Standards and Appeals (BSA) to revoke the C/O.
While the BSA proceeding was pending, the petitioner requested, and obtained, an amendment of the C/O from the Department.
The nature of the amendment, as well as its timing, is relevant to this proceeding.
The original C/O contained the following provisions relating to the parking facility:
"Accessory attendant garage for 100 motor vehicles (25 motor vehicles in C 4-6 — 75 motor vehicles in R-10) 10 motor vehicles in reservoir area.
“Parking garage will be operated primarily for the long term storage of the private passenger motor vehicles used by occupants of the apartments located at 2101-15 Broadway. However, such spaces may be rented to persons who are not *734 occupants of the apartments located at 2105-15 Broadway. Such spaces will be made available to the occupants of the apartments within 30 days after written request therefor is made to the landlord in accordance with Section 60 (lb) of the Multiple Dwelling Law and Section 25-412 Z.R.”
The reference to C4-6 and RIO in the C/O reflects the dual zoning district status of the Ansonia. A substantial portion of the premises is located in a commercial zone (C4-6), and the balance of the plot (furthest from Broadway) is in a residential zone (RIO, now designated R8-6).
The zoning resolution applicable to a C4-6 zone is New York City Zoning Resolution § 36-46. It provides as follows:
"36-46 Restrictions on Use of Accessory Off-Street Parking Spaces
"In all districts, as indicated, all permitted or required accessory off-street parking spaces, open or enclosed, shall be used primarily for the owners, occupants, employees, customers, residents, or visitors of the use or uses to which such spaces are accessory.
"Any off-street parking spaces accessory to residences which are not needed by the occupants of such residences, may be rented to persons who are not occupants of such residences for the accommodation of private passenger motor vehicles used by such persons. Such spaces shall be made available to occupants of the residences to which they are accessory within 30 days after written request therefor is made to the landlord. In addition, the rental of such spaces to non-residents shall be subject to the restrictions applying to the specified districts as set forth in this Section.”
New York City Zoning Resolution § 36-46 permits parking to nonoccupants without restriction as to the time period of parking.
Clearly, the objections raised by the Department in the violation and the petitioner in the notice to cure would be without merit under this zoning resolution.
The zoning resolution applicable to an RIO (R8-6) zone is New York City Zoning Resolution § 25-412. It provides as follows:
"25-412 In all other Residence Districts
"In the districts indicated, such spaces shall be designed and operated primarily for the long-term storage of the private passenger motor vehicles used by the occupants of such residences.
*735 "However, such spaces may be rented for periods of not less than one week and not more than one month to persons who are not occupants of the residences to which such spaces are accessory for the accommodation of the private passenger motor vehicles used by such non-residents, provided that such spaces are operated in accordance with the regulations promulgated by the Commissioner of Buildings, in a manner which will not adversely affect the residential character of the neighborhood. Such spaces shall be made available to the occupants of the residences to which they are accessory within 30 days after written request therefor is made to the landlord.”
Unlike in a commercial zone, New York City Zoning Resolution § 25-412 requires that in a residential zone parking is restricted in that parking to nonoccupants may not be for periods of less than one week. Hourly and daily parking is clearly prohibited.
The allocation of cars between the C4-6 zone and the RIO zone does not reflect the actual percentages of the plot in the respective zones, rather it represents the Department’s exercise of discretion to have the use of the garage made compatible with the nature of the premises, i.e., part commercial, part residential.
It was the respondent’s contention before the BSA that the C/O permitted 25 cars to be parked according to commercial rules and 75 cars to be parked pursuant to the more restrictive residential rules. If this position would have been upheld, the objections of the Department as expressed in the letter of February 15, 1986 and the notice of violation would have been overruled, the C/O would not be revoked and this proceeding would be resolved in favor of the respondent.
However, the BSA never had the opportunity to rule on the original C/O because of actions apparently taken in concert, by the petitioner and the Department to amend the C/O.
As aforesaid, while the issues described above were pending before the BSA, the petitioner, with the cooperation of the Department, filed an application to amend the C/O. On January 17, 1986, the date of the application, the Department granted the amendment.
The amended C/O provides with regard to parking, as follows:
"Accessory attendant garage for 100 motor vehicles, 10 motor vehicles in reserve area.
*736 "Note: Parking garage spaces may be rented for periods of not less than one week and not more than one month to persons who are not occupants of the residences to which the spaces are accessory for the accommodation of the private passenger motor vehicles used by such non-residents, provided that such spaces are operated in a manner which will not adversely affect the residential character of the neighborhood. Such spaces shall be made available to the occupants of the residences to which they are accessory within 30 days after written request therefor is made to the landlord.”
The differences between the matter quoted in the original and amended certificates are the only changes made pursuant to the amendment.
The deletion from the amended C/O of the allocation between the commercial and residential zones and the absence of any reference to the two zones has prompted the BSA to declare that it will not rule on the issues raised in the original C/O. The respondent’s effort to obtain a favorable ruling from the BSA has, therefore, been frustrated.
In light of the fact that the respondent was never served with a copy of the notice of violation, not notified of its existence until the time to contest its validity had passed, and the actions of the petitioner and the Department to amend the C/O (also done without any prior notice to the respondent), the respondent must now be afforded the opportunity to contest the validity of the Department’s objections.
The respondent contends that the dual nature of the site, part within a commercial zone and part within a residential zone, permits a mixed use, a use as contemplated by the original C/O.
This court must agree. The most reasonable interpretation of the original C/O is that 25 cars could be parked in accordance with commercial regulations. By limiting commercial use to 25% of capacity, the Department was tailoring the operation of the garage to the mixed nature of the site.
However, the Department’s letter of objections and subsequent notice of violation were inconsistent with the applicable zoning resolutions. To impose the most restrictive zoning resolution applicable to a part of the site so as to prohibit any commercial use was an impermissible attempt by the Department to restrict the rights of the owner, even if it was done in order to effectuate the purpose behind the zoning resolution. "The restrictions on the use of property imposed by the *737 Zoning Ordinance may not be extended by any administrative board or judicial tribunal in order to exclude a use which in its opinion should have been excluded in order to effectuate the purposes set forth in the preamble, nor may we give a strained meaning to the words of the ordinance in order to effectuate its purpose better.” (Matter of Westchester County Socy. for Prevention of Cruelty to Animals v Mengel, 292 NY 121, 126.)
A zoning ordinance must be strictly construed in favor of an owner of property. "Zoning laws which curtail and limit uses of property confer no privilege upon property owners. Even though in case of necessity such laws are properly within the exercise of the police power, the whole and each and every of the parts must be given a strict construction since they are in derogation of common-law rights. (People ex rel. Ortenberg v. Bales, 224 App. Div. 87; affd., 250 N. Y. 598; Matter of Multiplex Garages, Inc., v. Walsh, 241 N. Y. 527; Wood v. Tunnicliff, 74 N. Y. 38, 43; Woollcott v. Shubert, 217 N. Y. 212, 220).” (Matter of 440 E. 102nd St. Corp. v Murdock, 285 NY 298, 304.)
The attempt by the petitioner and the Department to produce a more restrictive C/O only "compounded the felony”. The fact remains that the mixed character of the site stems from its location in both commercial and residential zones. Absent a change in the zoning resolutions, the Department is without the power to further restrict use on the site.
Because of the lack of merit of the objections of the Department, this proceeding must fail.
Accordingly, final judgment in favor of the respondent, dismissing the petition.