LCB Parking Corp., Plaintiff, v Butterfield House, Inc., Defendant.

Supreme Court, New York County, March 2, 1989

### APPEARANCES OF COUNSEL

*Fink, Weinberger, Fredman, Berman, Lowell & Fensterheim, P. C. (Harvey A. Feintuch* of counsel), for plaintiff. *Donald J. Klein* for defendant.

### OPINION OF THE COURT

Felice K. Shea, J.

In this action, plaintiff LCB Parking Corp. seeks a declaratory judgment giving it authority to accept transient parking in the garage facility it leases underneath Butterfield House, Inc., a cooperative apartment building at 37 West 12th Street in Manhattan. Defendant, the cooperative corporate owner of

the building, has counterclaimed for declaratory relief barring plaintiff from renting space to transients. Transient parking is defined by the parties as parking by nonresidents of the cooperative on less than a monthly basis.

This matter was submitted on stipulated facts and memoranda of law. In addition, defendant called one witness, a Deputy Borough Superintendent of the New York City Department of Buildings, who gave his opinion that transient parking in the LCB garage is illegal. The court finds the analysis of defendant's expert to be flawed and, based on the entire record, holds that plaintiff may accept transient parking.

The parties agree that the garage is authorized to park 55 cars and that 45 of the garage spaces are rented monthly by cooperative tenants in the building. Plaintiff takes in transient parking customers on less than a monthly basis (weekly, daily or hourly) to fill the remaining 10 spaces and contends it is lawful to do so. Defendant's position is that plaintiff may not take in transient parking without a variance from the Board of Standards and Appeals, which plaintiff admittedly has not obtained. Defendant does not object to the rental of garage spaces to nontenants on a monthly basis, but alleges that transient parkers disturb the tenants by their noise, overcrowd the garage, commercialize a fine residential property, present a security risk, and impair garage service to the tenants. Plaintiff responds that defendant's complaints are unsubstantiated and motivated by the desire to end an unprofitable lease.[1]

The lease agreement between the parties includes the following clause: "3rd. That the Tenant [LCB] shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and Local Governments and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon or connected with said premises during said term".

Multiple Dwelling Law § 60 provides in pertinent part:

"A space may be provided and maintained in any multiple dwelling * * * for the storage of passenger motor vehicles but only with a written permit therefor when required by local

---

1. Defendant's allegation that plaintiff has taken in more than the maximum of 55 cars allowed under the certificate of occupancy was not pursued in this proceeding. Nor do the parties seek a factual determination of the merits of defendant's complaints.

law and in accordance with every applicable local law, ordinance, resolution, code provision or regulation and with the following provisions * * *

"[1.] b. Such space or structure shall be used solely for the storage of passenger motor vehicles of the occupants of the multiple dwelling * * * except that, in the event such space or structure or part thereof is not used by such occupants, it may be rented by the owner or owners of such dwelling to persons other than the occupants * * *. *Except as otherwise provided in paragraph d herein transient parking for any period of less than one month by non-occupants is unlawful.* * * *

"d. *A city may, by local law or ordinance, or the duly constituted planning or appeal board or commission of a city may by granting an approval, exception or variance, authorize transient parking for any period of less than one month of motor vehicles in dwellings by non-occupants in any space that is not let to an occupant pursuant to the other provisions of this section.*" (Emphasis supplied.)

Both parties urge consideration by the court of the purpose and legislative history of Multiple Dwelling Law § 60 in determining its meaning. A review of the statute as it has changed over the years reveals a legislative concern with the problem of traffic congestion and a willingness to expand permissible parking by nontenants in the garage facilities of multiple dwellings.

As initially enacted,[2] Multiple Dwelling Law § 60 provided in subdivision (6): "Such space or structure shall be used only for the storage of passenger motor vehicles of the tenants residing in the multiple dwelling where or on the premises appurtenant to which such space or structure is maintained".

In 1946, Multiple Dwelling Law § 60 (6) became section 60 (1) (b)[3] and in 1949, it was modified[4] to provide: "Such space or structure shall be used solely for the storage of passenger motor vehicles of the occupants of the multiple dwelling on the same premises except that, in the event such space or structure or part thereof is not used by such occupants, it may be rented by the owner or owners of such dwelling to persons other than the occupants thereof. * * * Transient parking for

2. L 1939, ch 553.
3. L 1946, ch 950.
4. L 1949, ch 553.

any period of less than one month by non-occupants is unlawful."

The purpose of this modification was explained by a memorandum of the Joint Legislative Committee on Housing and Multiple Dwellings[5] as follows:

"Within recent years the traffic situation in the city of New York has become increasingly worse. To alleviate this situation the general trend at the present time is to provide off-street storage for motor vehicles. * * *

"Under the present law a storage space for passenger cars is permitted on the same lot or in the same building with a multiple dwelling. Its use is confined solely to the occupants of such dwelling. * * *

"This bill would permit the letting to non-occupants of storage space not used by occupants. * * * However, the occupant must be given first choice and such space when rented to a non-occupant must be made available to an occupant upon written request. This bill definitely prohibits transient parking by non-occupants to prevent unwarranted commercialization."

In 1957, paragraph (b) of Multiple Dwelling Law § 60 (1) was further modified[6] and paragraph (d) was added creating an exception to the ban on transient parking if authorized by local law or ordinance. The 1957 enactment read, in pertinent part:

"[1.] b. * * * Except as otherwise provided in paragraph d herein transient parking for any period of less than one month by non-occupants is unlawful. * * *

"d. A city may, by local law or ordinance, authorize transient parking for any period of less than one month of motor vehicles in dwellings by non-occupants in any space that is not let to an occupant pursuant to the other provisions of this section".

The 1957 amendment was also recommended by the Joint Legislative Committee on Housing and Multiple Dwellings in a memorandum[7] which stated: "This amendment is designed to take advantage of the large amount of unused parking space in multiple dwellings to relieve to some extent the

**5.** 1949 NY Legis Ann, at 241-242. The memorandum was adopted by the Legislature in a footnote to the statute. L 1949, ch 553, at 1285.

**6.** L 1957, ch 451.

**7.** 1957 NY Legis Ann, at 273. The memorandum was adopted by the Legislature in a footnote to the statute. L 1957, ch 451, at 1171.

shortage of offstreet parking facilities for transient motor vehicles."

In 1959, the potential for transient parking in multiple dwelling garages was increased by an amendment[8] which changed paragraph (d) of Multiple Dwelling Law § 60 (1) into its present form *(see, supra,* at 997). For the first time authorization for transient parking for periods of less than one month could be given by variance.

Defendant points out that New York City Zoning Resolution § 13-12, promulgated in 1982 and applicable to newly constructed residential buildings in Manhattan, limits the use of off-street parking spaces to occupants of the building. While the 1982 zoning regulation may reflect a new approach for dealing with the intractable problems of traffic congestion and air pollution in New York City, it does not apply to the building herein and gives no guidance to the intent of the Legislature in enacting Multiple Dwelling Law § 60 (1) (d).

Defendant also cites *City of New York v Columbus Circle Apts.* (29 Misc 2d 763) to support its claim that Multiple Dwelling Law § 60 allows transient parking only if a variance is obtained. In *Columbus Circle Apts.,* the court noted that Multiple Dwelling Law § 60 (1) (b) originally "prohibited transient parking for any period of less than one month by nonoccupants in garages in multiple dwellings. In 1957, section 60 (subd. 1, par. d) of the Multiple Dwelling Law was added to permit cities to enact local legislation to permit transient parking in multiple dwelling garages, for a period of less than one month by nonoccupants. In 1959, section 60 (subd. 1, par. d) was further amended to permit transient parking, provided an exception or variance was granted by the duly constituted planning or appeals board of the city" *(supra,* at 764).

There is no implication in the *Columbus Circle Apts.* recital of legislative history that the 1959 amendment nullified the 1957 amendment. Neither this case (nor any other cited by defendant or uncovered by the court) supports defendant's contention that a variance is the only means by which a city can authorize transient parking. *(See, Ansonia Assocs. v Continental Ansonia Garage Corp.,* 132 Misc 2d 731, where regulation of transient parking by zoning resolution is discussed.)

Defendant submitted an affidavit from a registered archi-

---

**8.** L 1959, ch 828.

tect, former chairman of the New York City Board of Standards and Appeals, who states he was the original architect of Butterfield House. It is his view that "Section 60b *[sic]* of the Multiple Dwelling Law prohibits transient parking for periods of less than a month * * * regardless of any zoning regulations * * * unless and until a variance is *first* obtained. * * * [W]ithout the variance required by the Multiple Dwelling Law, transient parking for less than a month is illegal." No reasons are given for this conclusion and no persuasive argument is put forward by defendant why the court should give weight to this opinion.

Similarly unpersuasive is defendant's reliance on the actions of New York City agencies. Defendant states that the Department of Consumer Affairs imposed as a condition to licensing plaintiff that it accept no nontenant parking for less that 30 days. However, the 1973 violation placed on plaintiff's garage and the 1983 statement of compliance in which plaintiff agreed not to accommodate transient parkers have been superseded by a 1986 revised statement of compliance which provides: "in the event that there is any excess space in said garage, [LCB] may rent such excess space to persons who are not occupants of said multiple dwelling. Such excess spaces are not to be rented to non-occupants for periods of less than one month *unless otherwise permitted by law (see subsection 1-3 of Section 60 of the Multiple Dwelling Law)*" (emphasis added).

Thus, the Department of Consumer Affairs has declined to condition its license to operate on plaintiff's agreement to forego transient parking for periods of less than one month and instead has incorporated by reference Multiple Dwelling Law § 60. Moreover, the certificate of occupancy issued by the Department of Buildings in 1979 contains no time restriction on transient parking.

Defendant's argument that an exception to the prohibition against transient parking in Multiple Dwelling Law § 60 (1) (b) can be had only by variance is refuted by the plain language of section 60 (1) (d) permitting a city to authorize transient parking by local law *or* by variance. New York City, exercising the power conferred by Multiple Dwelling Law § 60 (1) (d), has enacted a Zoning Resolution that regulates transient parking in residential buildings. Approximately 72% of the garage under 37 West 12th Street, where the garage entrance fronts on West 13th Street, lies within a C-6 commercial zoning district. The remaining 28% of the garage, underneath

the building entrance on West 12th Street, falls within an R-6 residential district.

Defendant argues that if the court finds that the Zoning Resolution applies, then the rules regulating R-6 transient parking must govern. Defendant relies on section 11-22 of the Zoning Resolution of the City of New York which reads: "Whenever any provision of this resolution and any other provisions of law, whether set forth in this resolution or in any other law, ordinance, or resolution of any kind, impose overlapping or contradictory regulations over the *use* of land, or over the *use* or *bulk* of *buildings or other structures,* or contain any restrictions covering any of the same subject matter, that provision which is more restrictive or imposes higher standards or requirements shall govern".

Since the zoning regulation relating to transient parking in buildings located in R-6 areas is more restrictive, defendant maintains that section 25-412 of the Zoning Resolution is the controlling provision and the garage would be permitted to accept transient parking by nonresidents only for periods of "not less than one week and not more than one month".

Defendant's reliance upon Zoning Resolution § 11-22 is misplaced. It sets forth a rule of construction to resolve conflicts between provisions with overlapping subject matter, but no such conflict exists merely because the garage is partly in an R-6 district and partly in a C-6 district.

Sections 25-35 (applicable to residential districts) and 36-39 (applicable to commercial districts) of the Zoning Resolution, both entitled "Special Provisions for Zoning Lots Divided by District Boundaries", provide in identical language: "[W]henever a *zoning lot* is divided by a boundary between districts * * * having different requirements for accessory off-street parking spaces, the provisions set forth in Article VII, Chapter 7, shall apply."

Article VII, chapter 7 of the Zoning Resolution contains section 77-331 which reads in pertinent part:

"Use permitted in both districts

"For any *use* which is permitted in both such districts [including R-6 and C-6], the applicable requirements for *accessory* off-street parking * * * of that district in which more than 50 percent of the *zoning lot* is located shall apply to the entire *zoning lot*".

It is undisputed that more than 50% of the zoning lot is located in the C-6 commercial district. Thus, section 34-46 of

the Zoning Resolution, applicable to C-6 commercial districts, governs the entire zoning lot. It provides:

"Restrictions on Use of Accessory Off-Street Parking Spaces C1 C2 C3 C4 C5 C6 C7 C8

"In all districts, as indicated, all permitted or required accessory off-street parking spaces, open or enclosed, shall be used primarily for the owners, occupants, employees, customers, residents, or visitors of the use or uses to which such spaces are accessory.

*"Any off-street parking spaces accessory to residences which are not needed by the occupants of such residence, may be rented to persons who are not occupants of such residences for the accommodation of private passenger motor vehicles used by such persons"* (emphasis added).

Section 36-46 is devoid of time restrictions on parking by transients.[9] It is the opinion of defendant's expert that a garage that takes in transient parking without restriction is a "public parking garage" as defined in section 12-10 of the Zoning Resolution, that "public parking garage" is a primary and not an accessory use,[10] and therefore a variance is needed to permit transient parking at the LCB garage. The flaw in this reasoning lies in the premise that because a "public parking garage" rents spaces to transients, any garage that takes in transient parkers becomes a "public parking garage". No authority is cited to support this proposition other than the claim that the Department of Buildings has always so construed the law. The language of section 34-46 *(see, supra)* indicates otherwise in that parking spaces available to nonoccupants of the building are denominated "off-street parking spaces accessory to residences". Transient parking, limited to spaces not needed by occupants of the use to which such spaces are accessory, is not inconsistent with the accessory character of the garage. While there are no time restrictions on the transient parking permitted under section 34-46, there remains the limitation that no space may be rented to transients that is needed for the residents of the building. It is this

---

**9.** The silence of section 36-46 of the Zoning Resolution as to transient parking cannot be read as a prohibition in view of the limited transient parking permitted in R-6 districts under section 25-412. *(See also, Ansonia Assocs. v Continental Ansonia Garage Corp.,* 132 Misc 2d 731, 734.)

**10.** Accessory use is defined in section 12.10 of the Zoning Resolution as "a *use* clearly incidental to, and customarily found in connection with [the] principal *use;* and * * * operated and maintained * * * substantially for the benefit or convenience of the * * * occupants * * * of the principal *use.*"

limitation that distinguishes the LCB garage, and other garages accessory to residential buildings, from public parking garages.

The Multiple Dwelling Law allows transient parking in garages accessory to residences if authorized by local law. The Zoning Resolution permits transient parking in a garage accessory to a residence chiefly located in a C-6 commercial district. The lease between the parties contains no limitation on transient parking. Accordingly, plaintiff is free to accept transient parking in any space in its garage for any period of time, subject to the cooperative residents' prior right to rent garage space. Any space rented by a tenant shall be unavailable for transient parking whether or not the space is actually occupied by a tenant's automobile.[11]

Plaintiff is entitled to the declaratory relief it seeks; defendant's counterclaim is dismissed.

---

11.   In thus interpreting Multiple Dwelling Law § 60 (1) (d) ("A city may * * * authorize transient parking * * * by non-occupants in any space that is not let to an occupant"), the court has been guided by the testimony of defendant's expert witness. This construction, urged by defendant, was not opposed by plaintiff, and is consistent with Zoning Resolution § 36-46 ("spaces * * * which are not needed by the occupants * * * may be rented by persons who are not occupants") and the statement of compliance of the Department of Consumer Affairs ("excess space * * * may [be] rent[ed] * * * to persons who are not occupants").